## STATE v. CERTAIN INTOXICATING LIQUORS.

No. 3176.   Decided March 28, 1918.   (172 Pac. 1050.)

1. INTOXICATING LIQUORS — POSSESSION — STATUTES—CONSTRUCTION. Act Feb. 1, 1917 (Laws 1917, c. 2), entitled ''An act to define, prohibit and regulate sale, manufacture, use and possession of intoxicating liquor,'' and sections 2, 3, 26, thereof, abolishing property rights in liquors, and prohibiting possession thereof, except as provided in sections 6, 7, 8, and 9, permitting use for scientific, manufacturing, and sacramental purposes, forbids possession of liquors, regardless of when or how acquired, for what use, or where kept, aside from the enumerated exceptions.   (Page 572.)

2. CONSTITUTIONAL LAW—INTOXICATING LIQUORS—POSSESSION—DUE PROCESS OF LAW—EQUAL PROTECTION OF LAWS. Such act does not violate Const. art. 1, section 1, as to right to life and property, section 7, as to due process of law, nor Const. U. S. Amend. 14, as to due process of law and equal protection of the laws, since it is a valid exercise of police powers.   (Page 573.)

3. INTOXICATING LIQUORS — POSSESSION — STATUTES—CONSTRUCTION. Though claimant acquired intoxicating liquors prior to effective date of Act Feb. 1, 1917, prohibiting possession of intoxicating liquors and abolishing property rights therein, they were confiscable after such effective date.   (Page 578.)

Appeal from District Court of Weber County, Second District; *Hon. A. E. Pratt,* Judge.

Proceedings by the State against certain intoxicating liquors, wherein Otto Meek claimed the liquors.

On the appeal from the municipal court, the District Court dismissed the action. The State appeals.

REVERSED and remanded.

*Dan B. Shields,* Atty. Gen., *Jas. H. Wolfe* and *O. C. Dalby* Asst. Attys. Gen. for the State.

*Geo. Halverson* for respondent.

CORFMAN, J.

This was a proceeding begun on the complaint of the state, filed in the municipal court of Ogden City, against certain intoxicating liquors, seized by peace officers on the 18th day of August, 1917, under the provisions of chapter 2 of the Laws of Utah 1917, ''prohibiting the manufacture and use of intoxicating liquors and regulating the sale and traffic therein,'' entitled, ''An act to define, prohibit and regulate the sale, manufacture, use, advertising of, possession of, or traffic in intoxicating liquor, malt or brewed drinks; providing for its enforcement, and providing penalties and remedies for its violation.'' The municipal court, under the provisions of the said act, commanded and directed the liquors to be kept and held by the officers until otherwise disposed of according to law. An appeal was taken to the district court for Weber County. The defendant Otto Meek appeared, made claim to the liquors as the owner thereof, was made a party to the action, and moved to quash the order made by the municipal court and to dismiss the action upon the grounds, to wit: (1) That the court has no jurisdiction to hear, try, or determine the title to said intoxicating liquors; (2) upon the ground that said liquors were wrongfully and unlawfully seized and held. By stipulation of the parties the motion was treated as a submission of the case upon the merits.

As to the facts, so far as material here, it was further stipulated by the parties that the liquors, consisting of 134 pints of wine, 28 quarts of Sunny Brook whisky, and 12 one-fifth gallons of Old Hermitage whisky, were purchased by the defendant Otto Meek, and delivered to him at the premises of the Ogden Sales Company, Ogden City, Weber County, state of Utah, prior to the 1st day of August, 1917; that the

liquors were stored there for a time in a shed, and afterwards the defendant Meek caused them to be removed from the shed and placed in the attic of the building occupied as offices by the Ogden Sales Company, adjoining the private office of Meek, where they were kept under lock and key by Meek until seized by the officers on the 18th day of August, 1917. It was also stipulated that the liquors were purchased by the defendant Meek prior to August 1, 1917, the date when the prohibition law became in force and effective; that the liquors had been purchased, kept, and held in good faith without any intent to dispose of them by sale or otherwise in violation of law, and solely for the personal use of the defendant Meek when seized by the officers. Upon the facts, as stipulated, the district court rendered judgment dismissing the action and ordered that the officers having the liquors in custody restore them to the defendant Meek. From this judgment and order the state appeals.

The appeal presents primarily but two questions, to wit: (1) Do the provisions of the 1917 prohibition law forbid the possession of intoxicating liquor, within prescribed limits, regardless of when acquired or the purposes for which they are intended to be used? (2) If so forbidden, is the act of the Legislature constitutional? We will discuss the questions in the order named.

(a) The legislative act in question was passed February 1, 1917, and became effective August 1st, of the same year, and is entitled "An act to define, prohibit and regulate the sale, manufacture, use, advertising of, possession of * * * intoxicating liquor," etc. At the very outset, it is made manifest by the title of the act that there is intendment that the subject-matter to be treated is not only the traffic in intoxicating liquors but the "use" and "possession of" as well. The object of the title is to state the subject of the act. That must be conceded. Section 2 of the act defines liquors as follows:

"The word liquors as used in this act shall be construed to embrace all fermented, malt, vinous or spirituous liquors, alcohol, wine, porter, ale, beer, absinthe, or any other intoxicating drink, mixture or preparation of like nature, and all

malt or brewed drinks; and all liquids, mixtures or preparations, whether patented or not, which will produce intoxication; fruits preserved in alcoholic liquors of any kind; and all beverages containing in excess of one-half of one per centum of alcohol by volume, shall be deemed spirituous liquors, and shall be embraced in the word liquors as hereinafter used in this act; and all mixtures, compounds or preparations, whether liquid or not, which are intended when mixed with water, or otherwise, to produce, by fermentation or otherwise, an intoxicating liquor, shall also be deemed to be embraced within such term.''

Section 3 of the act prohibits:

''Except as hereinafter provided, the manufacture, sale, keeping or storing for sale in this state, or offering or exposing for sale, or importing, carrying, transporting, advertising, distributing, giving away, exchanging, dispensing, or serving of liquors, are forever prohibited in this state. It shall be unlawful for any person, within this state knowingly to have in his or its possession any intoxicating liquors, except as in this act provided.''

Section 26 reads as follows:

''There shall be no property rights whatsoever in liquors, vessels, appliances, fixtures, bars, furniture and implements kept or used for the purpose of violating or used in violation of any provision of this act.''

It is expressly provided in section 9 of the act that grain alcohol may be manufactured and sold under certain restrictions, and that wine may be acquired and used for sacramental purposes of religious bodies. Provisions are also made in sections 6, 7, and 8 of the act for the sale of alcohol for scientific and manufacturing purposes under prescribed rules and regulations.

No exceptions being made in the act other than the foregoing, we think it is made clear by the sections quoted that it was the legislative intent to not only forbid the possession but to abolish property rights in alcoholic liquors within the confines of the state after August 1, 1917, aside from the exceptions expressly provided for in the

act, no matter when or how acquired, for what use intended, or in what place kept or possessed.

(b) Such being the purpose and intent of the plain provisions of the legislative enactment, we are next confronted with the question, Does the act under consideration invade or abridge the privileges or immunities of the citizen guaranteed by the federal or state Constitutions? The question involves the scope of the police powers of the state. Section 1 of the act provides:   **2**

"Objects.   This entire act shall be deemed an exercise of the police powers of the state for the protection of the public health, peace and morals, and all of its provisions shall be liberally construed for the attainment of that purpose."

Section 1, art. 1, of the state Constitution, reads:

"All men have the inherent and inalienable right to enjoy and defend their lives and liberties; to acquire, possess and protect property," etc.

Section 7 of the same article provides:

"No person shall be deprived of life, liberty or property, without due process of law."

The Fourteenth Amendment to the Constitution of the United States provides:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Counsel for respondent contends for, and has incorporated in his brief and argument before this court, the findings and decision of the district court, wherein that court concludes and decides, after a very exhaustive review of the leading cases bearing upon the construction and validity of liquor laws in general, that the Utah law undoubtedly applies, and its validity is to be upheld in so far as the right to traffic in, acquire, and possess liquors prohibited since the law became effective, but concludes otherwise as to possession when liquors have been acquired and kept for personal use prior to August 1, 1917, as in the case at bar.   If we correctly interpret the

meaning of the opinion of the very able and learned trial judge, he holds that the act does not undertake to prohibit the use or drinking of intoxicating liquors within the state except as in the act expressly mentioned, and that the state may not, in the lawful exercise of its police powers, confiscate and destroy intoxicating liquors within the state, when acquired for personal use and recognized as property before the act became effective. In support of this doctrine the following cases are cited: *Wynehamer* v. *People,* 13 N. Y. 378; *State* v. *Eden,* 92 Wash. 1, 158 Pac. 967; same case on rehearing, 159 Pac. 700. We have heretofore pointed out that in our judgment it was the intent of the Legislature, and the plain provisions of the act abolishes, aside from the exceptions expressly made, all property rights in alcoholic liquors on and after August 1, 1917, no matter where or how acquired, for what use intended, or how possessed. It necessarily follows that the very purpose and intent of the act was to preclude the right to use intoxicating liquor within the state except for the specific purposes in the act expressly mentioned and reserved. If liquor cannot be legally acquired or procured, it may not be legally used.

While the law is somewhat drastic in some of its provisions—doubtless it was so intended to be—yet in view of the tendency of present day legislative enactments designed to protect the health, safety, morals and promote the general welfare of organized society it is not the province of the courts to disregard the purpose and intent of the Legislature so long as the constitutional rights of the individual have not been invaded. In *Commonwealth* v. *Campbell,* 133 Ky. 50, 117 S. W. 383, 24 L. R. A. (N. S.) 172, 19 Ann. Cas. 159, where it was contended the police power does not extend to the right of deprivation of a citizen to possess intoxicating liquor in his possession for his own use, the Kentucky court took occasion to say:

"It is not within the competency of government to invade the privacy of a citizen's life and to regulate his conduct in matters in which he alone is concerned, or to prohibit him any liberty which will not directly injure society."

As opposed to the view taken by the Kentucky court the Supreme Court of the United States, in the case of *Mugler* v. *Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, a case involving the constitutionality of the Kansas law, Mr. Justice Harlan said:

"The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge and thereby give effect to the Constitution. * * * There is no justification for holding that the state, under the guise merely of police regulations, is here aiming to deprive the citizen of his constitutional rights; for we cannot shut out the view of the fact, within the knowledge of all, that the public health, the public morals, and the public safety may be endangered by the general use of intoxicating drinks; nor the fact, established by statistics accessible to every one, that the idleness, disorder, pauperism, and crime existing in the country are, in some degree at least, traceable to this evil. If, therefore, a state deems the absolute prohibition of the manufacture and sale within her limits of intoxicating liquors for other than medical, scientific, and manufacturing purposes, to be necessary to the peace and security of society, the courts cannot, without usurping legislative functions, override the will of the people as thus expressed by their chosen representatives. They have nothing to do with the mere policy of legislation."

The same court, in the case of *Clark Distilling Co.* v. *Western Maryland R. Co.,* 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845, involving the constitutionality of both the Webb-Kenyon Act and the prohibition law of the state of West Virginia, in effect held a prohibition of possession for personal use a valid exercise of police powers. In that case the Clark Company brought suit to compel a common carrier to receive a shipment of liquor from one state claimed to be for personal use in another state. Section 34 of the West Virginia statute (Code Supp. 1918, ch. 32A, section 34 [sec. 1305h]) provides:

"It shall be unlawful for any person in this state to receive, directly or indirectly, intoxicating liquors from a com-

mon, or other carrier. It shall also be unlawful for any person in this state to possess intoxicating liquors, received directly or indirectly from a common, or other carrier in this state. This section shall apply to such liquors intended for personal use, as well as otherwise, and to interstate, as well as intrastate shipments or carriage.''

The Webb-Kenyon Act (U. S. Comp. St. 1916, section 8739) provides:

'' * * * That the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, * * * or other intoxicating liquor of any kind, from one state, terri-. tory, or district of the United States, * * * intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such state, territory, or district of the United States * * * is hereby prohibited.''

Clearly the Supreme Court of the United States, in upholding the constitutionality of both the West Virginia statute and the Webb-Kenyon Act, gave recognition that a statute forbidding the right to possession of liquor for personal use is constitutional, and not an invasion of the individual rights of the citizen. However, the same court, in the late case of *Crane* v. *Cambell, Sheriff,* 245 U. S. 304, 38 Sup. Ct. 98, 62 L. Ed. —, decided December 10, 1917, has put the questions here involved forever at rest. The case involved the validity of the Idaho statute, in many particulars similar to our own. Sections 15 and 22 of the Idaho statute (Laws 1915, c. 11) provide:

''It shall be unlawful for any person to import, ship, sell, transport, deliver, receive or have in his possession any intoxicating liquors except as in this act provided.''

''It shall be unlawful for any person, firm, company, corporation or agent to have in his or its possession any intoxicating liquors of any kind for any use or purpose except the same shall have been obtained and is so possessed under a permit authorized by this act.''

The agreed facts in that case were that one Crane was arrested for having in his possession on the 16th day of May,

1915, after the Idaho statute became effective, a quantity of whisky for his own use and not for the purpose of selling it or giving it away. On habeas corpus proceedings (*In re Crane*, 27 Idaho, 671, 151 Pac. 1006, L. R. A. 1918A, 942), the Idaho Supreme Court held the statute valid. The constitutionality of the statute was assailed under both the state and federal Constitutions. The Idaho court, after upholding the validity of the law, took occasion, in commenting on the right to possession, to say:

"Still it must be admitted that, if the possession of such liquor 'can by no possibility injure or affect the health, morals, or safety of the public,' the sale is equally harmless; for it only transfers the possession from one person to another. The fact is that the harm consists neither in the possession nor sale, but in the consumption of it."

The Supreme Court of the United States, in passing on the question involved, took occasion to say:

"It must now be regarded as settled that, on account of their well-known noxious qualities and extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of * * * liquors within its borders. * * * As the state has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. *Booth* v. *Illinois*, 184 U. S. 425, 22 Sup. Ct. 425, 46 L. Ed. 623, *Silz* v. *Hesterberg*, 211 U. S. 31, 29 Sup. Ct. 10, 53 L. Ed. 75, *Murphy* v. *California*, 225 U. S. 623, 32 Sup. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153, and *Rast* v. *Van Deman & Lewis*, 240 U. S. 342, 364, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455. And, considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors, we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose. We further think it clearly follows from our numerous decisions upholding prohibition legislation that the right to hold intoxicating liquors for personal use is not one of those fundamental privileges of a citizen of the United States which no state may abridge. A contrary view would be incompatible with the undoubted power to prevent manufacture, gift, sale, purchase or transportation of such articles—the only feasible ways of getting them. An assured right of possession would necessarily imply some adequate method to obtain not subject to destruction at the will of the state."

The tendency of the more recent legislation of the several states with respect to alcoholic liquors is directly against the

consumption. It is in the consumption always that the evil lies. A reading of the Utah statute convinces that primarily it was the purpose and intent of the Legislature to prevent the use of liquors within the confines of the state as a beverage, whether in private or moderation. The act itself provides that it shall be deemed an exercise of the police powers for the protection of society, and that all of its provisions shall be liberally contrued for the attainment of that purpose. The law in itself does not distinguish as to persons, time, place, or purpose for which liquors may be held or possessed except as in the act expressly mentioned and reserved. Officers and the courts are made chargeable with its observance and enforcement. Upon these its efficacy depends.

We are of the opinion, under the stipulated facts of the parties, that the trial court erred in holding that the liquors involved in this action, having been acquired by respondent Meek prior to August 1, 1917, and kept and held for his personal use, were not confiscable after August 1, 1917. It is therefore ordered that the judgment of the district court dismissing this action and ordering the officers of the law having the custody of the liquors described in the complaint to deliver them to respondent Otto Meek be reversed, and the case be remanded to the district court of Weber County. It is further ordered that the said liquors be, and the same are hereby, forfeited, and that the said district court enter judgment accordingly, and such proceedings be had as shall be in compliance with the provisions of chapter 2, Laws Utah 1917, section 18.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.