[No. 15535.  Department Two.  January 12, 1920.]

THE STATE OF WASHINGTON, *Respondent,* v.
JOE GIAUDRONE, *Appellant.*[1]

INTOXICATING LIQUORS (30)—UNLAWFUL POSSESSION—STATUTES—
CONSTRUCTION.  Laws 1917, p. 60, § 17h, amendatory of the prohibi-
tion act (Rem. Code, § 6262-1 *et seq.*), providing that it shall be un-
lawful for any person except clergymen or priests to have possession
of any intoxicating liquor other than alcohol, is inconsistent with
and impliedly repeals the provisions of the original act making it
lawful to give away intoxicating liquors in a private residence to be
drunk on the premises.

SAME (6)—UNLAWFUL POSSESSION—STATUTES—CONSTITUTIONALITY.
Laws 1917, p. 60, § 17h, making it unlawful for any person except
clergymen or priests to have possession of any intoxicating liquor
other than alcohol, is not unconstitutional as abridging the privil-
eges or immunities of citizens or as depriving any person of life,
liberty or property without due process of law.

Appeal from a judgment of the superior court for
Kittitas county, Davidson, J., entered June 6, 1919,
upon a trial and conviction of violating the prohibition
law.  Affirmed.

*Pruyn & Hoeffler,* for appellant.

*Arthur McGuire* and *C. R. Hadley,* for respondent.

FULLERTON, J.—The defendant, Giaudrone, was con-
victed by a jury of a violation of the act relating to
the manufacture, keeping, sale and disposition of in-
toxicating liquors, and appeals from the judgment pro-
nounced against him.

The facts of the case are not in dispute.  The de-
fendant, in the fall of the year 1914, manufactured a
quantity of grape wine, some forty gallons of which
he had in his possession on December 27, 1918.  The
wine was kept at his private home, for the use of him-

[1] Reported in 186 Pac. 870.

self and his family as a beverage, without intent or purpose to sell or dispose of it in barter or traffic. The wine was an intoxicating liquor other than alcohol, and the defendant was not at the time a regularly ordained clergyman, priest or rabbi actually engaged in ministering to a religious congregation.

At the appropriate time during the course of the trial, the defendant requested the court to instruct the jury that, under the facts shown, it was their duty to find the defendant not guilty. The court declined so to charge, but, on the contrary, charged that it was immaterial for them to inquire when possession of the liquor was first obtained, or the purposes for which it was intended to be used, and if they were convinced by the evidence beyond a reasonable doubt that the defendant had in his possession at the time named in the information, namely, December 27, 1918, the wine described, and that it was an intoxicating liquor other than alcohol, and that the defendant was not then an ordained clergyman, priest or rabbi actually engaged in ministering to a religious congregation, they should find the defendant guilty as charged in the information.

In this court the defendant makes two principal contentions. He contends, first, that the prohibition acts do not make the mere having in possession of intoxicating liquor a crime, when it is kept for the sole use of the possessor as a beverage, without intent or purpose to traffic therein; and second, that if the act is so construed, it is violation of fundamental rights guaranteed the individual by the state and Federal constitutions.

Noticing the first of these contentions, it is not to be denied that the acts in consideration contain language which in its natural and unrestricted meaning makes it an offense for any person, other than a person

of a certain designated class, to have in his possession intoxicating liquor other than alcohol. Section 17h of the act of 1917 (Laws 1917, p. 60), which is amendatory of the original prohibition act known as Initiative Measure No. 3 (Rem. Code, § 6262-1 *et seq.*), expressly declares that:

"It shall be unlawful for any person other than a regularly ordained clergyman, priest or rabbi actually engaged in ministering to a religious congregation, to have in his possession any intoxicating liquor other than alcohol."

But it is contended, if we have correctly gathered the meaning of the appellant's learned counsel, that this particular section is not to be given a literal effect, as to do so would make it inconsistent with other provisions of the act, and inconsistent with the general tenor of the act taken as a whole.

The particular provisions pointed out are the concluding clause of section 4 of the original act (Rem. Code, § 6262-4), which was not repealed by the amendatory act, and which provides that it shall not be unlawful for a person to give away intoxicating liquor, to be drunk on the premises, to a guest in his private dwelling or apartment which is not a place of public resort, and § 23 of the amendatory act, which provides that, in any prosecution for a violation of the act, it shall be competent to prove possession of intoxicating liquor, and that, such proof "shall be *prima facie* evidence that said liquor was so held and kept for the purposes of unlawful sale or distribution," the argument with reference to these provisions being that, if it is lawful to give intoxicating liquor away in any manner, and if possession is only *prima facie* evidence of a violation of the law, it cannot have been meant that mere possession is also a violation of the law.

But as to the first of these sections, it will be noticed that it is a part of the original initiative measure, and that the section cited as containing the prohibition is amendatory of the original measure and a later expression of the legislative will. In so far as there is a conflict between them, the earlier provision is superseded by the later, and in so far as the language of the later section is direct and mandatory and free from ambiguity, it is to be construed without reference to the language of the earlier provisions. That there is a conflict must be conceded. A man cannot lawfully give his neighbor drink of that which he may not himself lawfully possess. But it is also true that the later act is in its language direct and mandatory and without ambiguity. We cannot, therefore, but conclude that the earlier provision was superseded by the later one.

A reading of the act will disclose the purpose of the other provision cited. It had defined a "jointist" as a person who opens up, conducts or maintains, either as principal or agent, any place for the unlawful sale of intoxicating liquor, and a "bootlegger" as any person who carries about with him intoxicating liquor for the purpose of unlawful sale, making these acts punishable as felonies, while other violations are punishable as misdemeanors. Since the provision in consideration relates to unlawful sales, it must be read in connection with those provisions of the act to which it can relate, not as superseding mandatory provisions with which it can have no relation other than by an inference more or less remote. But more than this, the section but prescribes a rule of evidence, and it is not the rule that one section of a statute so limited will in itself be allowed to control or supersede plain mandatory provisions of the same statute, although subsequent in place in the statute and apparently otherwise meaningless.

The argument founded upon the general tenor of the acts, we cannot think tenable. The various provisions of the act are too extended to be inserted here, but a study of its several provisions convinces us that it was the purpose of the legislature to prohibit entirely the use of intoxicating liquors as a beverage; or, as the current phrase expressed it, "make the state bone dry."

The case of *State v. Eden*, 92 Wash. 1, 158 Pac. 967, 159 Pac. 700, is cited as supporting the conclusion that possession of liquor lawfully acquired prior to the passage of the initiatory measure is not a violation of the provisions of the act. But that case was decided prior to the passage of the amendatory act, when it did not forbid a limited use of intoxicating liquors, and when it did not contain the sweeping provision now found in the section before cited designated as section 17h. The decision was based on provisions of the act many of which have been directly repealed. Plainly it was not there asserted, or intended to be asserted, that the state may not make criminal the possession of intoxicating liquor, whensoever or howsoever acquired.

In support of his second contention, the defendant points to no specific provision of the constitution that has been violated. His argument is that the mere possession of intoxicating liquor kept for one's own use is not inherently injurious to the health, morals or safety of the public, and that therefore legislation prohibiting such having in possession is not a legitimate exercise of the police power, but is, on the contrary, void as an unjustified abridgment of inherent rights of the individual. There are cases which support the principle contended for, and it may be that the weight of authority is with that side of the con-

troversy.　See *Cortland v. Larson,* 273 Ill. 602, 113
N. E. 51, Ann. Cas. 1916E 775, L. R. A. 1917A 314.
But we think the better reason is with the contrary
view, and it has in its support the Federal supreme
court.　In the recent case of *Crane v. Campbell,* 245
U. S. 304, the court had before it a statute of the state
of Idaho making it a criminal offense for any one to
have in possession intoxicating liquors except for a
limited purpose.　It was contended that the statute
was violative of the Federal constitution which de-
clares: "No state shall make or enforce any law
which shall abridge the privileges or immunities of
citizens of the United States; nor shall any state de-
prive any person of life, liberty, or property without
due process of law."　The court in passing upon the
contention used this language:

"It must now be regarded as settled that, on ac-
count of their well-known noxious qualities and the
extraordinary evils shown by experience commonly to
be consequent upon their use, a State has power abso-
lutely to prohibit manufacture, gift, purchase, sale, or
transportation of intoxicating liquors within its bor-
ders without violating the guarantees of the Four-
teenth Amendment.　*Bartemeyer v. Iowa,* 18 Wall.
129; *Beer Company v. Massachusetts,* 97 U. S. 25, 33;
*Mugler v. Kansas,* 123 U. S. 623, 662; *Crowley v. Chris-
tensen,* 137 U. S. 86, 91; *Purity Extract Co. v. Lynch,*
226 U. S. 192, 201; *Clark Distilling Co. v. Western
Maryland Ry. Co.,* 242 U. S. 311, 320, 321; *Seaboard
Air Line Ry. v. North Carolina, ante,* 298.

"As the State has the power above indicated to pro-
hibit, it may adopt such measures as are reasonably
appropriate or needful to render exercise of that
power effective.　*Booth v. Illinois,* 184 U. S. 425; *Silz
v. Hesterberg,* 211 U. S. 31; *Murphy v. California,*
225 U. S. 623; and *Rast v. Van Deman & Lewis Co.,*
240 U. S. 342, 364.　And, considering the notorious
difficulties always attendant upon efforts to suppress

traffic in liquors, we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose.

"We further think it clearly follows from our numerous decisions upholding prohibition legislation that the right to hold intoxicating liquors for personal use is not one of those fundamental privileges of a citizen of the United States which no State may abridge. A contrary view would be incompatible with the undoubted power to prevent manufacture, gift, sale, purchase or transportation of such articles—the only feasible ways of getting them. An assured right of possession would necessarily imply some adequate method to obtain not subject to destruction at the will of the State."

The reasoning of the court is applicable to the contention made under our state constitution, and we adopt it as expressive of our views.

The judgment is affirmed.

HOLCOMB, C. J., MOUNT, BRIDGES, and TOLMAN, JJ., concur.