[Crim. No. 959.   Fourth Dist.   Apr. 28, 1954.]

THE PEOPLE, Respondent, v. TONY GARCIA, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was convicted by a jury of violating section 11500 of the Health and Safety Code in that he unlawfully possessed a narcotic commonly known as heroin. He admitted a prior conviction of burglary and violation of the Dyer Act, and that he had served terms of imprisonment therefor.

About 3 p. m. on July 30, 1953, defendant was apprehended while driving his car near Banning. When he was searched there was found in his left front trousers pocket two rubber containers filled with a powder substance. When asked by the officers where he obtained the "stuff" he said he had picked it up in Palm Springs and was taking it to Los Angeles because he was "hard pressed for money."

The narcotics agent delivered the containers to the Los Angeles Police Department crime laboratory for examination. A city police officer assigned to that division as chemist, after stating his qualifications, testified that each contained approximately 90 grams of powder-like substance; that he made an analysis therefrom by means of several tests known as the

Marquis, Meches, nitric acid, and microcrystalline with mercuric chloride tests, and concluded therefrom that the material in each container contained a narcotic known as heroin.

The narcotics inspector testified that according to the narcotics jargon the word ''stuff'' meant narcotics, and that these rubber stalls were used on many occasions for the purpose of carrying narcotics.

Defendant did not testify in his own behalf. On this appeal from the judgment of conviction and motion denying his new trial he contends that he was denied a fair trial by being brought into court in jail clothes instead of in an ordinary suit of clothes, and that a prisoner is entitled to make his appearance before the jury free from all bonds and shackles, citing such cases as *People* v. *Harrington,* 42 Cal. 165 [10 Am.Rep. 296]; and *Matthews* v. *State,* 9 Lea (77 Tenn.) 128 [42 Am.Rep. 667].

From the evidence it appears that while the jury panel was in the courtroom defendant's case was called and defendant was, at that time, dressed in a ·blue denim shirt and trousers; that there was some writing on each, marked ''County Jail''; that counsel, out of the presence of the jurors, asked the trial judge to discharge the entire panel because of the prejudice that resulted in the minds of the jurors in general, and because of their knowledge that defendant was then confined in jail. This request was denied. However, the court ordered that thereafter the defendant be dressed in an ordinary suit of clothes. This order was followed throughout the rest of the trial.

It does not appear that defendant was brought into court shackled or in bonds, in any manner. It appears that the jury might well have known, other than by the writings on the clothing, that defendant was, at the time, in the custody of the sheriff. Apparently, no former request was made to have defendant appear in ordinary clothing. No authority is cited that holds that if the jury is informed that defendant is in the custody of the sheriff or in jail at the time of trial, it would be prejudicial error to order defendant to trial under those conditions. The jurors were subsequently examined by counsel for defendant and it does not appear which, if any, of such jurors noticed the writing on the clothing or that any juror was influenced or challenged by reason of that fact or that defendant exhausted his peremptory challenges. Defendant accepted the jurors after examination for cause, and it does not affirmatively appear that a fair and

impartial trial could not be had by the jurors called. No prejudicial error resulted. (*People* v. *Stonecifer*, 6 Cal. 405, 411; *People* v. *Deveny*, 112 Cal.App.2d 767 [247 P.2d 128]; *People* v. *Cross*, 64 Cal.App. 443 [221 P. 684].)

Defendant next contends that certain extrajudicial statements of his which were testified to by the police officers were confessions, and that the court erred in overruling his objection that it had not been shown that they were freely and voluntarily made, and in allowing them to be introduced without such preliminary showing. In respect to the alleged admissions or confessions the evidence shows, in questioning the officers, that certain questions were propounded and certain answers were given after showing the time, place and parties present. The officers were asked generally to give the conversation they had with defendant. Counsel for defendant objected because no sufficient foundation had been laid in regard to its being freely and voluntarily made. The court inquired of the prosecutor if the testimony was being offered as a confession and the prosecutor replied that it was not. The objection was overruled and the witness then related that the defendant, when asked "where he got the stuff" said "he had picked it up in Palm Springs and was taking it to Los Angeles"; that a picture of defendant and some woman was shown to the defendant and he was asked if he recognized the woman and he said he did; that he asked defendant if he realized "that this (the container) does not belong to you," and that it was wrong to take narcotics from one town to another, and defendant said that he did realize such fact; that defendant was then asked why he did it and he said: "I was hard pressed for money"; that he picked it up from a woman (Mexican girl) in Palm Springs and was taking it to Los Angeles; that he was then asked who he was taking it to and defendant refused to answer any further questions until he talked with his attorney; that defendant then stated he had been waiting in Palm Springs for about three days to receive the merchandise; and that he then asked defendant how the people would know he was "the one to receive the narcotics" and he answered "by his clothing, by his dress."

After these conversations were recited counsel for defendant made no motion to strike them nor did he request further opportunity to examine the witness as to foundational questions and whether the statements were made freely and voluntarily. It does appear that many of the state-

ments attributed to defendant amounted only to admissions of fact or declarations, or of guilty conduct, and could not be characterized as a confession or acknowledgment of guilt of the offense charged. ■ Under such circumstances it is not necessary to show that a statement which is an admission and does not amount to a confession was made freely and voluntarily before it may be related. (*People* v.. *Cummings,* 7 Cal.App.2d 406, 408 [46 P.2d 778] ; *People* v. *Connelly,* 195 Cal. 584, 597 [234 P. 374].)

■ Some of the statements made, when considered with other evidence established, do amount to a consciousness of guilt or may even be considered as a confession of guilt. Apparently the court was, in good faith, informed by the district attorney that they did not amount to a confession and accordingly it properly ruled at that time as to their admissibility. If counsel for defendant, after hearing the testimony, had any different belief in this respect, it was his duty to call the court's attention to this fact and the court no doubt would have given counsel the opportunity to determine whether such claimed confession was or was not obtained freely and voluntarily. Under the circumstances, no prejudicial error resulted. (*People* v. *Long,* 43 Cal. 444; *People* v. *Kamaunu,* 110 Cal. 609 [42 P. 1090].)

■ It is next argued that the evidence is insufficient to support the verdict in that there is no proof of guilty knowledge that the substance was a narcotic. From the evidence produced and the claimed statements of defendant in this respect there appears to be little merit to this contention. (*People* v. *Foster,* 115 Cal.App.2d 866, 868 [253 P.2d 50] ; *People* v. *Torres,* 98 Cal.App.2d 189 [219 P.2d 480] ; *People* v. *Gin Hauk Jue,* 93 Cal.App.2d 72 [208 P.2d 717].)

■ In this connection it is claimed, since no quantitative analysis of the two grams of powdered substance was made and since the expert did not determine what portion was quinine and what portion was heroin, and since the evidence shows the portion found to be heroin was so infinitesimal it constituted no substantial amount, that accordingly the evidence did not support the finding of the jury in this respect. It appears from the evidence that several other recognized tests, other than the quantitative analysis were made, and that the sample of powdered substance examined did contain sufficient heroin to be detected by those tests. The expert testified that he could not say whether there was or was not other material in the substance besides heroin but did state that

there was a chance that it also contained quinine. The question of the sufficiency of the evidence was properly left to the jury to determine. (*People* v. *Hyden,* 118 Cal.App.2d 744 [258 P.2d 1018].)

The next complaint is that the court erred in refusing to give certain instructions offered by defendant on the subject of knowledge, which instructions defendant contends were taken from the language of *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433]. They were to the effect that before the jury could convict the defendant it must be established beyond a reasonable doubt that defendant had knowledge of the presence of heroin in the substance found; that he knowingly had such heroin in his possession; that mere possession of the objects introduced in evidence without proof, beyond a reasonable doubt, of knowledge as to its contents would not constitute proof of defendant's guilt, and that the meaning of the word ''possession'' includes the exercise of dominion and control over the thing possessed.

The nature of the charge was read to the jury, i.e., that he did willfully and unlawfully have in his possession a narcotic commonly known as heroin. The court instructed the jury that before defendant could be convicted it was necessary to establish beyond a reasonable doubt the allegations of the information; that it was unlawful for any person to have in his possession a narcotic except upon written prescription of a physician, etc.; that the term ''narcotic,'' as used in the instructions, meant heroin; and that one element of the claimed offense which respective counsel discussed before the jury was the question of knowledge or lack of knowledge of possession of a narcotic by the defendant. In this connection the court instructed the jury that ''To constitute unlawful possession, as I have indicated in these instructions, the defendant must have possession knowingly, since there can be no criminal possession of an article without knowledge of its existence and presence. There need not, however, be any specific knowledge on the part of the defendant of the *nature* of the drug possessed. You must determine whether the defendant knowingly had possession of this substance''; and that ''Within the meaning of the law, a person is in possession of a narcotic when it is under his dominion and control, and, to his knowledge, either is carried on his person or is in his presence and custody, or, if not on his person or in his presence, the possession thereof is immediate, accessible, and exclusive to him.'' And that ''The law of this state admonishes

you to view with caution the testimony of any witness which purports to relate an oral admission of the defendant or an oral confession by him.''

The Gory case, *supra,* relied upon by defendant, holds that in such an offense the matter of knowledge in relation to defendant's awareness of the presence of the object is a basic element, and such knowledge must precede the intent to exercise physical control, but that an instruction requiring the jury to find ''guilty intent'' and ''guilty knowledge'' was not proper; that an instruction requiring that the accused should have been aware of his possession of the proscribed narcotic was proper and necessary under the evidence there produced; and that the ''distinction which must be drawn . . . is the distinction between (1) *knowledge of the character of the object and the unlawfulness of possession thereof* as embraced within the concept of a specific intent to violate the law, and (2) *knowledge of the presence of the object* as embraced within the concept of 'physical control with the intent to exercise such control,' which constitutes the 'possession' denounced by the statute. It is 'knowledge' in the first sense which is mentioned in the authorities as being immaterial but 'knowledge' in the second sense is the essence of the offense.'' Under this authority and the authorities therein cited, the instructions given sufficiently covered the subject matter, and the court did not prejudicially err in refusing to give the proffered instructions.

The refusal to give proffered instructions to the effect that when a person commits an act through misfortune, accident, or while unconscious, he commits no crime, was proper since they had no application to the evidence produced. (*People v. Black,* 103 Cal.App.2d 69, 79 [229 P.2d 61]; *People v. Sameniego,* 118 Cal.App. 165, 173 [4 P.2d 809, 5 P.2d 653].)

The last objection, to the effect that the trial judge overstepped the bounds of legal propriety, under article VI, section 19, Constitution of California, in reference to his right to comment on the evidence, is also untenable. Near the close of the trial the judge stated that under the constitutional provision he was authorized to comment generally, within proper bounds, in respect to his opinion as to the credibility of any witness and in aid of determining the facts, and to make certain comments concerning the evidence in the case. He then thoroughly cautioned the jury that the ultimate questions presented were for the jurors to determine and that they were the exclusive and ultimate judges in weighing the evidence

as well as weighing the opinion of the trial judge made in connection therewith. He then remarked:

"If we analyze the evidence, it appears to me that certain things stand out:

"First, it seems to me that there is no question that the two items mentioned as Exhibits 2 and 3 were found in the pocket of the defendant.

"Second, it is my opinion that this substance contained heroin.

"Third, heroin is a narcotic within the meaning of the Code section which the defendant is accused of violating.

"The element as to which there has been some discussion in the argument of counsel is as to the knowledge or lack of knowledge of possession of a narcotic by the defendant."

Then followed the instruction above mentioned as to what constituted unlawful possession, and the law as therein related pertaining to the element of knowledge. He then remarked:

"You must determine whether the defendant knowingly had possession of this substance.

"It would appear to me to be a reasonable inference to be drawn from the evidence that the defendant knew of its placement in his pocket. The physical facts existing at the time of the arrest might so indicate to a reasonable mind.

"I want to impress upon you, as jurors, that you are—— and I am not—— the final determiner of the facts and credibility of witnesses. You are in no way bound by my opinion as it is expressed here. You, as a jury, must determine the guilt or innocence of the defendant."

The claim is that by the judge's remarks he told the jury that, as a matter of fact, defendant was possessed of a narcotic and that he, in substance, told the jury that defendant had "guilty knowledge" thereof and that, under these circumstances, the jury could hardly have escaped bringing in a verdict of guilty. (Citing *People* v. *Talkington*, 8 Cal.App. 2d 75, 95 [47 P.2d 368], as limiting the court's rights in this respect.) It was there held that under the provisions of the section of the Constitution involved the court had the right to comment on the evidence, the testimony and credibility of any witness, but that it did not admit of an argument being made by the court to the jury under the appellation of "comments." There the trial judge went much farther than the judge did in the instant case. He adopted the argument of the prosecutor which, in effect, told the jury that the evidence

showed that the defendant deliberately murdered the deceased and asked that a verdict of murder in the first degree be returned by the jury. The comments here made were clearly stated by the trial judge to be his opinion as to what facts stood out in his mind; that in his opinion the evidence showed that the substance found on defendant contained heroin, but that there was some question as to the knowledge or lack of knowledge of possession of a narcotic by defendant. On this latter question he expressed no opinion. Defendant did not take the witness stand and accordingly no evidence was produced by him to contradict the testimony of the expert who analyzed the substance. Defendant did not testify that he had no knowledge that the substance found in his possession was a narcotic. Accordingly, it does not appear that the comments made by the trial judge were acts of advocacy or that they were intemperate or emotional. He did not state that, in his opinion, the defendant was guilty of the offense charged. He did not go outside the record in his comments. They were only expressions of his opinion that from the evidence certain things had been shown. The judge was not called upon to review any testimony offered in favor of the defendant. The crucial questions involved were properly left to the determination of the jury under the instructions given. Defendant was not erroneously prejudiced by the comments. (*People* v. *Gosden,* 6 Cal.2d 14, 28 [56 P.2d 211] ; *People* v. *De Moss,* 4 Cal.2d 469, 476 [50 P.2d 1031] ; *People* v. *King,* 30 Cal.App.2d 185, 205 [85 P.2d 928] ; *People* v. *Robinson,* 73 Cal.App.2d 233, 236 [166 P.2d 17].)

These same questions were presented on a motion for new trial, which was denied.

Judgment and order denying a new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1954.