600 P.2d 787

STATE of Idaho, Plaintiff-Respondent,

v.

Roscoe A. KELLOGG,
Defendant-Appellant.

No. 12434.

Supreme Court of Idaho.

Sept. 26, 1979.

Stanley D. Crow, Boise, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

McFADDEN, Justice.

Following trial before a jury, defendant-appellant Roscoe A. Kellogg, who asserts he is a naturopathic physician, was found guilty of the crime of unlawful possession (i. e., without prescription) of a controlled substance, amobarbital and secobarbital, a misdemeanor. After denying defense motions for new trial, motion for acquittal and motion for arrest of judgment, the trial court entered its judgment of conviction, and sentenced the defendant to a $500 fine and a term of six months in the county jail. However, the trial court suspended the jail term and placed the defendant on probation for two years. The defendant appealed from that judgment. This court affirms the judgment for the reasons hereinafter discussed.

Appellant first assigns as error (this appeal having been taken prior to effective date of the Idaho Appellate Rules adopted in 1977) the denial of his motion to suppress. A brief recital of the facts in this regard is in order. Prior to institution of this action an affidavit for a search warrant was filed, seeking authority to search the premises where appellant maintained his office. In this affidavit, L. A. Galland, the director of the City (Nampa) and County (Canyon) Narcotics and Major Crimes Intelligence Division, stated that a certain individual had purchased arthritic medication from appellant (tests reflected that the medication so purchased was a drug with the trade name of Prednisolone). Thereafter a detective under affiant's direction purchased without a prescription more arthritic medication from appellant, supposedly for the use of the first individual. The affidavit further recited that the affiant was advised by a member of the State Board of Pharmacy that appellant was not a person authorized by law to sell or dispense prescription drugs. The search warrant was issued, reciting that there was probable cause to believe that prescription drugs had been dispensed by persons not qualified to dispense them and without a valid prescription, and that prescription drugs, with file records indicating who had purchased various prescription drugs, were located on appellant's premises. The search warrant ordered an immediate search for this property, i. e., prescription drugs and the file records.

Pursuant to the search warrant, officers searched appellant's premises and found Prednisolone, together with many other drugs of various kinds, including the capsules that form the basis of the instant action. These capsules were later identified by the State as containing a mixture of amobarbital and secobarbital, which is manufactured under the trade name of Tuinal.

Appellant moved to suppress the evidence obtained under the search warrant in this case and also in a related case, *State v. Kellogg*, which involved the drug Prednisolone. In the related case, the district court ruled that I.C. § 37–2210, which makes the unauthorized dispensing of Prednisolone a criminal offense, was unconstitutional. In the instant case appellant argues that the search warrant was invalid because it was based on a showing that appellant had dispensed Prednisolone, and since the district court held I.C. § 37–2210 to be unconstitutional there was no probable cause to be-

lieve that a criminal offense had been committed.

■ This court's decision in the related case, *State v. Kellogg*, 98 Idaho 541, 568 P.2d 514 (1977), which reversed the district court's judgment and upheld the constitutionality of I.C. § 37–2210, disposes of appellant's argument. Since the statute making the unauthorized dispensing of Prednisolone a criminal offense is not unconstitutional, there was probable cause to support the search warrant which resulted in the discovery of the capsules at issue. Moreover, the search warrant satisfies all the legal requisites set forth in I.C. § 19–4401, et seq., and I.C.R. 41. Cf. *People v. Schmidt*, 172 Colo. 285, 473 P.2d 698 (1970). Consequently, the district court properly denied appellant's motion to suppress the capsules.

Next appellant contends that his conviction must be reversed because the State failed to allege or prove that he acquired the capsules after the effective date of I.C. § 37–2732(c)(2), the statute under which he was convicted. That statute provides in relevant part:

> "It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription . . ., or except as otherwise authorized by this act."

In support of his contention, appellant argues that the above statute was not intended to prohibit the continued possession of substances obtained prior to the effective date of the statute; and that if I.C. § 37–2732(c)(2) is interpreted otherwise, it amounts to an unwarranted retroactive application of the statute. Appellant also argues that if I.C. § 37–2732(c)(2) applies to substances obtained before that statute's effective date, it is unconstitutional because it deprives persons of their property without just compensation. Thus, it is appellant's theory that if he obtained the capsules prior to the effective date of I.C. § 37–2732(c), he has a vested right to keep them without liability for criminal prosecution.

Appellant's argument raises two primary issues: (1) Is I.C. § 37–2732(c) applicable to controlled substances which were acquired prior to the effective date of that statute? (2) If so, is the statute constitutional? For the reasons discussed below, we answer both questions in the affirmative.

■ I.C. § 37–2732(c) is part of the Uniform Controlled Substances Act (hereafter "Act") which became effective in Idaho on May 1, 1971. 1971 Idaho Sess.Laws Ch. 215, sec. 4, p. 969. Neither I.C. § 37–2732(c) nor any other provision of the Act distinguishes between controlled substances acquired prior to the Act's effective date and controlled substances acquired after that date. Pursuant to I.C. § 37–2732(c), *possession* of any controlled substance on or after the effective date of the Act constitutes a criminal offense, except under certain specified conditions, e. g., possession pursuant to a valid prescription, possession of a common carrier in the usual course of business, possession pursuant to registration as manufacturer, distributor, dispenser or researcher. *State v. Gibbs*, 239 N.W.2d 866, 867 (Iowa 1976); *State v. Ruiz*, 127 N.J.Super. 350, 317 A.2d 403 (1974); *Tharps v. State*, 555 P.2d 1054 (Okl.Cr.1976); *Commonwealth v. DeCampli*, 243 Pa.Super. 69, 364 A.2d 454 (1976); *State v. Perry*, 10 Wash.App. 159, 516 P.2d 1104 (1973). The applicability of I.C. § 37–2732(c) to all controlled substances, regardless of when they were obtained, is made clear by a subsequent provision in the Act regarding forfeitures. I.C. § 37–2744(a)(1), (d)(1) provides that: "All controlled substances which have been . . . acquired, *possessed or held* in violation of this act" constitute contraband "and shall be summarily forfeited to the State." (Emphasis added.) Thus, under I.C. § 37–2732(c) it is immaterial when a controlled substance was acquired, for the offense is the unauthorized *possession* of a controlled substance, without regard to the time the substance was acquired. Consequently, there was no burden on the State to allege or prove when the capsules at issue were acquired and appellant's objection to the State's failure to do so is without merit.

■ Despite appellant's claim to the contrary, this interpretation of I.C. § 37–2732(c) does not constitute a retroactive application of the statute. The statute does not provide a penalty for the acquisition of controlled substances prior to the effective date of the Act. Rather, the penalty it imposes is for continuing to possess a controlled substance after the Act's effective date.

In the instant case appellant was charged with possessing a controlled substance on May 7, 1975, in violation of I.C. § 37–2732(c). At trial appellant admitted that he did not have a prescription for the capsules at issue and he did not claim any other exemption from the prohibitory provisions of the statute. Appellant's subsequent conviction was not because of anything he did, or omitted to do, prior to the effective date of I.C. § 37–2732(c), but because the jury found that after that date he continued to possess a controlled substance in violation of the Act. Consequently, appellant's conviction pursuant to I.C. § 37–2732(c) cannot be considered a retroactive application of the statute. Cf. *Delaney v. Plunkett*, 91 S.E. 561, 570 (Ga.1917).

■ We now address appellant's final argument in regard to I.C. § 37–2732(c): that the statute, by prohibiting the possession of substances acquired before its effective date, unconstitutionally deprives persons of their property without just compensation.

The issue appellant raises is whether or not a state can constitutionally prohibit the possession of a substance that was lawfully obtained before the prohibitory act. The United States Supreme Court addressed this issue in *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887). *Mugler* concerned a Kansas statute that prohibited the manufacture and sale of intoxicating liquors within the state, with certain specified exceptions not relevant here. In *Mugler* the defendants, who were found guilty of violating the prohibitory liquor law, owned breweries which were lawfully engaged in the manufacture and sale of beer prior to the enactment of the prohibitory statute. In their appeal from their convic-

tions to the United States Supreme Court, the defendants conceded that Kansas, in the exercise of its police powers, could lawfully prohibit the manufacture and sale of intoxicating liquors. However, the defendants argued that the state must compensate them for their breweries and beer before the effective date of the prohibitory act, to accord with the Fourteenth Amendment to the Constitution of the United States. Justice Harlan, speaking for the court, said "This interpretation of the fourteenth amendment is inadmissible. It cannot be supposed that the states intended, by adopting that Amendment, to impose restraints upon the exercise of their powers for the protection of the safety, health, or morals of the community. . . .

. . . . .

"As already stated, the present case must be governed by principles that do not involve the power of eminent domain, in the exercise of which property may not be taken for public use without compensation. A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit. . . . The power which the States have of prohibiting such use by individuals of their property, as will be prejudicial to the health, the morals, or the safety of the public, is not—and, consistently with the existence and safety of organized society, cannot be—burdened with the condition that the state must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. . . ." 123 U.S. 664, 668–669, 8 S.Ct. 298, 301.

■ It is now well settled that in legislating in behalf of the public morals, health and safety, the state by reason of its police power may enact laws which incidentally impair property values or destroy them altogether without necessarily violating the guarantees of the Fourteenth Amendment. *Mugler v. Kansas, supra; Silz v. Hesterberg*, 211 U.S. 31, 29 S.Ct. 10, 53 L.Ed. 75 (1908); *Crane v. Campbell*, 245 U.S. 304, 38 S.Ct. 98, 62 L.Ed. 304 (1917), affirming 27 Idaho 671, 151 P. 1006 (1915); *Samuels v. McCurdy*, 267 U.S. 188, 45 S.Ct. 264, 69 L.Ed. 568 (1925); *O'Rear v. State*, 72 So. 505 (Ala.1916); *Delaney v. Plunkett, supra; State v. Certain Intoxicating Liquors*, 51 Utah 569, 172 P. 1050 (1918); *State v. Giaudrone*, 109 Wash. 397, 186 P. 870 (1920); 37 A.L.R. 1386.

Moreover, the forfeiture provisions of the Uniform Controlled Substances Act,[1] which provide for the forfeiture of all controlled substances possessed in violation of the Act, have been held constitutional. *State v. One 1967 Ford Mustang*, 266 Md. 275, 292 A.2d 64 (1972); *One Cessna Aircraft v. Cessna International Finance Co.*, 90 N.M. 40, 559 P.2d 417 (1977). On the basis of the authorities cited above, it is this court's conclusion that I.C. § 37–2732(c) does not violate the Fourteenth Amendment to the Constitution of the United States.

Appellant's third and fourth assignments of error concern the capsules which were allegedly found in his possession. Appellant argues that the State failed to prove an essential element of the crime charged because there is insufficient evidence that the capsules contain a controlled substance. Specifically, appellant claims that scientific testimony identifying the capsules as a combination of amobarbital and secobarbital, which was given by Pamela J. Southcombe, an expert witness for the State, is insufficient to support a finding that the capsules contain a controlled substance because Southcombe's identification of the capsules was based on laboratory tests which were not properly conducted. Appellant also claims that there are other, preferred tests which Southcombe could have performed to obtain a more reliable identification of the capsules.

■ Substance identification is an issue of fact to be decided by the jury. *People v. Garcia*, 124 Cal.App.2d 822, 269 P.2d 673 (1954); cert. den. 348 U.S. 901, 75 S.Ct. 225, 99 L.Ed. 708, cert. den. 350 U.S. 1000, 76 S.Ct. 554, 100 L.Ed. 864. 28 C.J.S. *Drugs and Narcotics* Supp. § 217 (1974). In the instant case the State's proof that the capsules contain amobarbital and secobarbital depends almost entirely upon the testimony of Pamela J. Southcombe, a chemist employed by the Idaho Department of Health and Welfare, who testified for the State as an expert in the field of controlled substances and prescription drugs. Appellant did not challenge Southcombe's qualifications to testify as an expert witness at the trial below, and that is not an issue in this appeal. Nor did appellant object to the admission of Southcombe's testimony on the basis of its competency. Southcombe testified that the capsules allegedly found in appellant's possession contain a mixture of amobarbital and secobarbital. Southcombe based her opinion on her identification of the capsules in the *Physicians' Desk Reference* and on the results of four laboratory tests which she performed on the capsules. The tests Southcombe conducted included a Dille-Kopanyi spot test for preliminary screening purposes and two microcrystal tests, one using Wagonaar's reagent and the other using potassium hydroxide and phosphoric acid. Finally, Southcombe performed a gas chromatography test to confirm the results of the microcrystal tests. At trial Southcombe explained the procedures employed by each of the above tests and she testified that the tests are accepted in the field of forensic chemistry as valid techniques for drug identification. Southcombe also testified as to how she conducted each of the four tests on the capsules at issue.

Appellant's evidence on this issue consisted of the expert testimony of Asaad N.

---

1. Codified in Idaho as I.C. § 37–2744.

Masoud, a doctor of pharmacognosy. The record discloses that Dr. Masoud did not analyze the capsules at issue and he did not offer an opinion as to what the capsules contain. The substance of Dr. Masoud's testimony was that there are more reliable tests for drug identification than those used by Southcombe and that the tests which Southcombe did perform were not conducted in accordance with professional standards. When asked whether the results of Southcombe's tests were incorrect, Dr. Masoud answered: "I don't like your word 'incorrect.' There has been precautions that could have been done that hasn't been done for more reliable results, but I didn't say incorrect, no."

 This court is not persuaded by appellant's argument. As indicated above, appellant's evidence did not contradict Southcombe's opinion that the capsules contain a controlled substance, i. e. amobarbital and secobarbital. Instead, appellant attempted to discredit Southcombe's opinion by introducing expert testimony which challenged the reliability of the testing procedures Southcombe used. Such a challenge goes only to the weight to be afforded Southcombe's testimony. *Stroscheim v. Shay*, 63 Idaho 360, 120 P.2d 267 (1941); *State v. Olivas*, 77 Ariz. 118, 267 P.2d 893 (1954); *People v. Bobczyk*, 343 Ill.App. 504, 99 N.E.2d 567 (Ill.App.1951). The credibility of witnesses and the weight to be accorded their testimony is for the jury. Where there is competent though conflicting evidence to sustain the verdict, this court cannot reweigh that evidence or disturb the verdict. *State v. Froelich*, 96 Idaho 685, 535 P.2d 658 (1975); *State v. Lewis*, 96 Idaho 743, 536 P.2d 738 (1975); *State v. Brown*, 94 Idaho 352, 487 P.2d 946 (1971). In the instant case the jury was at liberty to believe Southcombe's testimony or reject it as unreliable. By convicting appellant of the unlawful possession of a controlled substance, the jury apparently chose to accept Southcombe's opinion that the capsules at issue contain amobarbital and secobarbital. Southcombe's testimony furnished competent and sufficient evidence to support such a finding. We therefore conclude that the record contains sufficient evidence to sustain the jury's verdict of guilty.

 Appellant's final assignment of error concerns alleged juror misconduct. Appellant argues that this court should reverse his conviction because a member of the jury considered testimony from a prior trial at which Pamela Southcombe, the State's expert witness, testified. Appellant's only evidence of this alleged misconduct consists of statements allegedly made to Linda M. Sherwood, defense counsel's legal assistant, by a member of the jury. The alleged statements were set forth in an exhibit which purports to be an affidavit prepared for the signature of the juror. However, according to an affidavit by Linda Sherwood, the juror "declined to sign" the affidavit. Such a showing is not a sufficient offer of proof and the district court properly refused to receive this evidence. It is our opinion that appellant's argument to the contrary is without merit.

Judgment of conviction affirmed.

DONALDSON, C. J., and SHEPARD, BAKES and BISTLINE, JJ., concur.

BAKES, Justice, concurring specially:

In view of the decision of this Court in the prior case, *State v. Kellogg*, 98 Idaho 541, 568 P.2d 514 (1977), the Court is correct today in affirming the judgment of conviction.