[Crim. No. 481.   Fourth Dist.   Feb. 1, 1944]

THE  PEOPLE,  Respondent,  v.  JOE  FLORES  et  al.,
Appellants.

Noah P. Rico in pro. per., Henry W. Hache and Edgar G. Langford for Appellants.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendants were jointly charged in the first count of an information with the crime of kidnaping, and in four other counts each defendant was separately and respectively charged with the crime of rape. A jury found each defendant guilty on both charges and judgments were entered sentencing each defendant to the penitentiary, the terms on the two charges to run consecutively. Each defendant appealed from the judgment as to him and from an order denying his motion for a new trial. Thereafter, at the request of the defendant Hanks, his appeal was dismissed.

The general facts involved are as follows: The complaining witness was 19 years old and, apparently, had separated from her husband who was in the Army. About midnight on December 26, 1942, she came out of a café on Fourth Street in downtown San Diego. As she emerged from the café she was accidentally struck on the forehead by a bottle in the hands of one of several women engaged in a fight in front of the café. She was dazed and bleeding from the wound and a passing sailor led her across the street to an automobile occupied by the four defendants. The sailor suggested that she be taken to a doctor and someone of the appellants replied that they would do so. She was taken into the automobile and it was driven away, the appellant Rico doing the driving. They proceeded out Market Street and instead of taking her to a doctor they went out several miles and then left the highway and traveled some distance over a dirt road, eventually stopping at an isolated spot, where each of the appellants had sexual intercourse with her. Some time later, the appellants returned to town and let the complaining witness out

of the car in front of or near her home. She hailed a passing car and, at her request, was taken directly to the police station, where she told what had occurred. We are unable to find in the record the exact time when she arrived at the police station, but the police surgeon testified that he examined her there at 3 :30 a. m. on December 27th.

Each of the appellants first contends that the evidence is insufficient to sustain his conviction on the charge of kidnaping. It is argued that the complaining witness voluntarily entered the automobile and that the only evidence of force in connection with the automobile trip is certain evidence that she attempted to jump out of the car at 16th and Market Streets while it was traveling 35 or 40 miles an hour, and that she was restrained and pulled back into the car by one of the appellants in order to save her life. While there is such evidence, there is other evidence that she opened the door of the car and tried to jump out while it was stopped at a stop-sign at 16th and Market, which was less than a block from her home, and that she was forcibly restrained by two of the appellants.

There is ample evidence that the complaining witness was taken out to this lonely spot against her will. She was taken into the car on the representation that she would be taken to a doctor. As they proceeded out Market Street she realized that they were not taking her to a doctor and she repeatedly asked them to take her home or to a doctor. The appellants only laughed and told her she was not hurt, although she was bleeding profusely at the time. According to some of the evidence, which the jury was entitled to accept, she opened the door and tried to jump out when the car stopped at 16th and Market, near her home, and two of the appellants forcibly held her in the car. Although she frequently asked them to take her home the appellants continued on to the lonely spot in question and when they arrived there she was forcibly taken from the car and pushed to the ground. On two occasions she ran away but both times she was caught and brought back. If her testimony, and a part of the testimony of the appellants, is to be believed no reasonable person could doubt that she was taken to this spot against her will and without her consent. She entered the car as the result of a misrepresentation and the appellants actually used some force and repeatedly refused to discontinue the trip or to allow her to leave the car after she dis-

covered she was not being taken to a doctor. There is sufficient evidence of a forceful taking and carrying away of the complaining witness, within the meaning of section 207 of the Penal Code. (*People* v. *Rosa,* 10 Cal.App.2d 668 [52 P.2d 542] ; *People* v. *Ogden,* 41 Cal.App.2d 447 [107 P.2d 50].)

It is next urged by all of the appellants that the evidence is insufficient to sustain their convictions on the charges of rape accomplished by threats of bodily harm. These counts of the information were based upon subd. 4 of Penal Code, sec. 261, which applies where the female is prevented from resisting ''by threats of great and immediate bodily harm, accompanied by apparent power of execution.'' It is argued that since the complaining witness testified that she made no physical resistance at the times in question because she was afraid of the appellants, and because she further testified that no spoken threats were made as to what they would do to her if their demands were refused, it follows that there were no threats of great and immediate bodily harm within the meaning of the statute and that they could not be convicted under this subdivision of section 261.

We are unable to agree with the view that there can be no threat within the meaning of this statute unless it is expressed in words or through the exhibition of a gun, knife or other deadly weapon. A threat may be expressed by acts and conduct as well as by words. If one were met in a lonely place by four big men and told to hold up his hands or to do anything else, he would be doing the reasonable thing if he obeyed, even if they did not say what they would do to him if he refused. Their actions and manner might well indicate their purpose and intention and it would be a mere play on words to say that these actions and circumstances did not constitute and were not the expression of a threat. In fact, it would be a very compelling one. We think similar considerations are applicable here.

There is plenty of evidence not only that the complaining witness was forcibly taken to this secluded spot but that force was there used. Two police officers testified that they talked with three of the defendants two days after the incident occurred. That Flores told them that he and the other defendants were together in Rico's car and picked up the complaining witness, who was bleeding at her forehead; that she asked them to take her to a doctor; that while they

were en route she opened the door and attempted to jump out; that he grabbed her and yanked her back into the car, because he feared she would get hurt; that all four had sexual intercourse with her; and that she tried to run away and one of them ran after her and brought her back. That Hanks told them that she tried to jump out of the car and Flores and Holman pulled her back. That Holman told them that after they arrived at the lonely spot and before she was taken from the car she pleaded with him saying "Don't let them strike me any more, I will submit"; that she ran away from the scene and somebody brought her back; and that after two of them had had intercourse with her she grabbed hold of him and pleaded with him not to let them commit these acts any more. There is evidence that her pants were torn off from her before she was taken from the car; that she was dragged from the car; that she was pushed or shoved to the ground; that when she attempted to arise she was shoved back; that after she was assaulted by the second man she succeeded in running away and was caught and brought back by one of the men; that she consented to none of the acts; that she appealed to two of the men to protect her from the others; that through it all she talked to them all and tried to get them to take her home and offered to pay them if they would do so; that she told them she was going to report the matter to the police when she got back; that after the four acts were completed she ran away again and was caught and brought back; that on this occasion she tried to hit Hanks with a board but he grabbed her wrist and took it away from her and brought her back; that all of the men slapped her during the night; that after the acts were accomplished and they were proceeding back to the highway they stopped and one of the men accused her of taking his purse; that while they were stopped a car went by on the highway and she screamed at it; and that one of the men then slapped her and knocked her down. She was then taken back to the spot where the acts occurred and the purse was there found. She testified that she did not put up a fight at the time because she was afraid of them. When asked if they displayed any weapons she replied that four big Mexicans did not need any weapons against her. She testified that they did not tell her they were going to do anything to her if she refused, but she knew they would. When asked if she resisted she said: "I tried to talk to them because I was afraid of them. There

was no way I could resist four big men.'' She was badly hurt at the time and was bleeding. The police surgeon testified that he put in two stitches in the cut on her forehead. He also testified that she was ''pretty well beat up around the head,'' and that in addition to the cut on her forehead there was a marked contusion of the whole left side of her face, a bloody nose, a bruise of the left upper lip and a scratch on her neck.

Whether or not the evidence would have sustained a conviction under subd. 3 of Penal Code section 261, we think that all of these circumstances and the acts and conduct of the appellants constituted a very real threat to the complaining witness within the meaning of subd. 4, and that they sufficiently explain the absence of final resistance on the part of the complaining witness. While there is much conflicting evidence the question was one of fact for the jury and it cannot be held that its finding thereon is without support in the evidence. (*People* v. *Rosa,* 10 Cal.App.2d 668 [52 P.2d 542]; *People* v. *Ogden,* 41 Cal.App.2d 447 [107 P.2d 50].)

The appellant Rico raises two other points which require little consideration. He first argues that the court committed prejudicial error in trying all of the defendants together when all of them were not jointly charged in each of the several counts charging rape against a particular individual. The offenses of rape thus charged were directly connected together in their commission and all of the charges on which the several appellants were convicted involved one set of circumstances. Not only does it not appear that this appellant made any objection to this method of trial but it is well settled that charges so arising may be united for trial. (Pen. Code, secs. 954, 1098; *People* v. *Guerra,* 22 Cal.2d 183 [137 P.2d 21]; *People* v. *Kaye,* 43 Cal.App.2d 802 [111 P.2d 679].)

This appellant further argues that the court erred in its instructions to the jury in that it read the definition of the word ''willful'' as set forth in subdivision 1 of section 7 of the Penal Code, and also gave the following instruction:

''A person must be presumed to intend to do that which he voluntarily and wilfully does in fact do and in the absence of satisfactory proof to the contrary, it is presumed that a

person intends all the natural, probable and usual consequences of his own acts; except that this instruction does not apply where specific intent is an essential element of the crime charged, in which event, the intent itself must be proved beyond a reasonable doubt.''

It is argued merely that reading the definition of the word ''willful'' removed the element of specific intent from the consideration of the jury, and that this conflicted with the other instruction ''that a specific intent is necessary to constitute a crime.'' The criticism is without merit and, so far as we can see, the jury was properly instructed.

The judgments and orders denying a new trial, as to each of the appellants, are affirmed.

Marks, J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 28, 1944.