536 P.2d 738

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Chester LEWIS and Raymond B. Robinson,
Defendants-Respondents.**

**No. 11705.**

Supreme Court of Idaho.

June 12, 1975.

Wayne Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-appellant.

Peter D. McDermott, Pocatello, for defendants-respondents.

BAKES, Justice.

Defendants Raymond B. Robinson and Chester Lewis were each charged with the crimes of kidnapping and rape. Following presentation of the state's evidence, the trial court granted the defendants' motion to dismiss the charges involved on the ground that the state had not proved the elements of these crimes beyond a reasonable doubt. The state has appealed from the order granting the defendants' motion to dismiss.

Lewis and Robinson were both accused of the kidnapping and rape of a Pocatello woman. At the trial she testified that at approximately 2:00 a. m. on the morning of June 22, 1973, as she was leaving a friend's party and walking toward her car to return home, she saw one of the defendants, Chester Lewis, on the street. She testified that he had said, "Hi;" she responded, "Hi;" then Lewis grabbed her, put his hand over her mouth and told her not to scream or try to make any noises. Then two other men, one of whom was identified as defendant Raymond Robinson, and the other of whom was never identified, appeared. She was forced into the cab of a pickup, and Lewis again told her to be quiet. She testified that Robinson, who was driving the vehicle, then took the four of them to a remote and uninhabited area several miles outside of Pocatello. After they stopped, she testified that Lewis got her out of the cab and into the bed of the truck where there was a sleeping bag. She entered the sleeping bag and Lewis later entered the sleeping bag with her and engaged in a single act of sexual intercourse with her. Although she testified that she did not struggle or resist to prevent the act of intercourse, she claimed she did not consent to the act of intercourse but engaged in it because she feared for her life. She even admitted to kissing Lewis in response to his advances, but for the same reason.

She testified that during the two hours she spent in the back of the truck with

Lewis that she had persuaded him to try to convince the other two men not to have intercourse with her. According to her testimony, Lewis agreed to do this, but returned to her after talking with the other two men and told her that they would not agree to this. Then, she testified, Robinson came to the back of the truck and engaged in a single act of sexual intercourse with her. Following that, the third man also came to the back of the truck and engaged in a single act of intercourse with her.

She testified that after this the truck was driven back to Pocatello and she was released near the point where she claimed she was abducted. She claimed that at that time, in an effort to entrap Lewis she gave him her name, address and telephone number and agreed to meet him in a local city park the following afternoon. When she met Lewis in the park that afternoon, Lewis was arrested by a detective from the Pocatello police department who had accompanied her there.

The following witnesses were among the witnesses that the prosecution called to testify during the trial: the physician who examined the complaining witness at approximately 5:30 a. m. on the morning of June 22, 1973; the complaining witness's father; the police officer who had responded to the father's call to the police department; and the police officer who had arrested Lewis in the park. The physician who had examined the complaining witness testified that his examination of her showed that she had engaged in intercourse within the three days before his examination. He further testified that he found no evidence of bruising anywhere on the complaining witness's body nor evidence of torn or bruised tissue in the vaginal area. The complaining witness's father testified that she had returned home at approximately 4:30 or 5:00 a. m. on June 22,

1973, and that she was screaming and in a hysterical state at that time. He testified it took 15 to 20 minutes to calm her to a state in which she could talk to him. He then called the police. The police officer who answered the call and accompanied the complaining witness to the hospital to be examined said that she was in a state of "controlled hysteria," crying and on the verge of breaking down. The police officer who arrested Lewis said that the complaining witness seemed noticeably upset that afternoon in the park. He further testified that Lewis had admitted to him to engaging in intercourse with the complaining witness, but denied forcing her or raping her.

At the close of the prosecution's presentation of evidence, the defense moved for a dismissal of both the kidnapping and rape charges against both defendants. In arguing upon this motion, defense counsel emphasized his assertion that there had been no proof that force was used to accomplish the act of intercourse. After considering counsel's arguments, the court made the following ruling:

"It's the burden of the prosecuting attorney to prove all of the elements of the crime beyond a reasonable doubt. I don't believe you've proved the elements of these crimes beyond a reasonable doubt. There is still reasonable doubt as to her fear and I don't believe this is a proper case for this court to allow it to go to the jury. Therefore, I'm going to grant the motion to dismiss as both to the kidnapping and to the rape charge." Rptr. Tr., p. 95.

The prosecution has appealed from this ruling of the trial court.

■ The first question which we must decide is whether this court should consider this appeal. I.C. § 19–2804,[1] which enu-

---

[1]. "19–2804. *Appeal By The State.*—An appeal may be taken by the state:
  1. From a judgment for the defendant on a demurrer to the indictment or information.

[2]. From an order, entered before the trial of a person charged with a criminal offense, which directs the return of seized property, suppresses evidence, or otherwise denies the

merates six orders, rulings or judgments from which appeal may be taken by the state, does not include in that list appeals from an order granting a defendant's motion to dismiss. If this statute exclusively defines our authority to hear appeals by the state in criminal matters, then we must dismiss this appeal. But it does not. The Idaho Constitution, in Art. 5, § 9, defines the appellate jurisdiction of this Court: "The Supreme Court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof, . . . ." That section of the Constitution gives this Court power to review "any decision" of the district courts even though I.C. § 19–2804 does not give the aggrieved party, in this case the state, a right of appeal to this Court. *See* State v. Berlin, 95 Idaho 225, 506 P.2d 122 (1973), where we referred to this plenary power of review, although we declined to exercise it. *See also* State v. Tinno, 94 Idaho 759, 497 P.2d 1386 (1972), where we dismissed an appeal because it was not authorized by I. C. § 19–2804, but nevertheless thought it advisable to decide the issues of law involved in the case because they presented a recurring problem concerning hunting and fishing rights of the Shoshone-Bannock Indians. Our holding that we shall exercise this plenary right of review is in conflict with the cases of State v. Ridenbaugh, 5 Idaho 710, 51 P. 750 (1897), and State v. Grady, 31 Idaho 272, 170 P. 85 (1918), and for the reasons set forth in the following paragraphs we overrule these two cases.

*Grady* was a short case which reaches its conclusion upon this question by citation to a legal encyclopedia, the *Ridenbaugh* case, and several cases decided by other states. It neither expands upon the holding in *Ridenbaugh* nor offers additional reasons for upholding *Ridenbaugh*; therefore, its vitality is dependent solely upon the continued vitality of *Ridenbaugh*.

In *Ridenbaugh* the Court construed Article 5, § 9, as not allowing this Court to hear appeals by the state from decisions of the district courts when such appeal is not authorized by statute, even though the literal language of the Constitution allows an appeal from "any decision" of the district court. The Court in *Ridenbaugh* reached that conclusion because such a decision would have, in the Court's opinion, undermined the common law and constitutional prohibitions against twice being put in jeopardy for the same offense. This argument is not persuasive. The power to consider the state's argument on appeal is not coincident with the power to remand the case for further proceedings in violation of the double jeopardy provisions of the Idaho and United States Constitutions. So long as we do not order a disposition of the case that subjects the defendant to being twice put in jeopardy for the same offense, our holding is in conformity with the Constitutions of Idaho and of the United States and we are exercising powers that have been given to this Court by the Constitution of Idaho and which cannot be withheld by the legislature. "The legisla-

prosecution the use of evidence at trial if the prosecuting attorney and the attorney general certify to the judge who granted such motion that the appeal is taken in good faith, is not taken for the purpose of delay, and that the evidence suppressed constitutes a necessary portion of the state's case to prove the charge pending against the defendant. No such property or evidence shall be returned until the expiration of ten (10) days from and after the date on which the order was entered. An appeal by the state pursuant to this subsection shall stay the return of such property or evidence and shall constitute a bar to the prosecution of the case unless

such order is reversed upon appeal. Appeals pursuant to this subsection shall be expedited by the Supreme Court and shall receive priority over all other criminal and civil appeals.

   3. From an order granting a new trial.

   4. From an order arresting judgment.

   5. From an order made after judgment affecting the substantial rights of the prosecution.

   6. From any ruling of the trial judge during the course of the trial on the receipt or rejection of testimony, and from any ruling of the trial judge on the giving or refusal to give instructions to the jury."

ture shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it . . . ." Idaho Constitution, Art. 5, § 13. Accordingly, *Ridenbaugh* and *Grady* are overruled.

By overruling *Ridenbaugh*, we have not made an abrupt departure from precedent. *Ridenbaugh's* holdings have already been considerably eroded. In *Ridenbaugh*, after stating that we had no jurisdiction over the appeal that the state had attempted to bring, we further said that all authority and reason forbade us from expressing any view upon the legal question that would have been presented had we considered the substantive merits of the case. But in Tinno, *supra*, although we concluded we would not hear the appeal on the merits, we nevertheless expressed our opinion upon the legal question involved therein. To that extent, *Ridenbaugh* had already been overruled. The language in Berlin, *supra*, which indicated that this Court has plenary power under the Idaho Constitution, Article 5, § 9, to hear appeals by the state not authorized by I.C. § 19–2804, was in direct opposition to the holding in *Ridenbaugh*. Our holding today merely makes explicit the implicit overruling of *Ridenbaugh* in these two cases. Because we believe, as we did in *Tinno*, that we should clarify the construction of a criminal statute under which the defendants were prosecuted, we will now consider the merits of the trial court's ruling.

The defendants were each accused of a single count of kidnapping[2] and rape.[3] These counts were dismissed by the district judge pursuant to his authority under I.R. Cr.P. 29, which provides:

"RULE 29. *Motion For Judgment Of Acquittal*—(a) *Motion Before Submission To Jury.* The court on motion of the defendant or on its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the state is not granted, the defendant may offer evidence."

If there was sufficient evidence introduced during this trial to sustain a conviction for either rape or kidnapping, the court erred in granting the motion to dismiss.

The complaining witness gave the following testimony upon which a conviction for kidnapping could be sustained:

"Q. . . . [N]ow you said that you encountered the defendant Mr. Lewis on the street outside the motel and you were on your way to your car. Is this correct?

"A. Yes.

"Q. What happened after that? Did you have further contact with him at that point?

2. "18–4501. *Kidnapping Defined.*—Every person who wilfully:

1. Seizes, confines, inveigles or kidnaps another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, or to be sent out of this state, or in any way held to service or kept or detained against his will; or,

. . . . .

3. Abducts, entices or by force or fraud unlawfully takes or carries away another at or from a place without the state, or procures, advises, aids or abets such an abduction, enticing, taking or carrying away, and afterwards sends, brings, has or keeps such person, or causes him to be kept or secreted within this state; . . . ."

3. "18–6101. *Rape Defined.*—Rape is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, under either of the following circumstances:

. . . . .

3. Where she resists, but her resistance is overcome by force or violence.

4. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution; or by any intoxicating narcotic, or anaesthetic substance administered by or with the privity of the accused."

"A. Well, he grabbed me by the—put his hand over my mouth and he told me *not to scream or try to make any noises.* Then out of nowhere these other two guys came up and probably about a half a block away, I guess, they put me in the cab of this truck and the other one sitting there, he was the driver. Ray [Robinson].

. . . . . .

"Q. Well, what happened after that? Did [Robinson] drive some place after you had been placed in the car?

"A. Yes.

"Q. Now, did you at any time agree to go into this truck?

"A. No, I did not.

"Q. How were you caused to enter the vehicle?

"A. I don't understand.

"Q. Were you forced into the truck?

"A. Yes, I was, by two of them.

"Q. Did that amount to or involve forcibly pushing or pulling you into the truck?

"A. Well, they were—dragging me, I guess, half way dragging me, running—

"Q. Was anything said to you at that time by—

"A. They just told me to be quiet. That one did, Chet [Lewis] did. He kept telling me to be quiet." Rptr. Tr., pp. 13–14.

The following testimony which the complaining witness gave during cross examination also tends to show that a kidnapping had taken place:

"Q. You say [Lewis] grabbed you around the mouth?

"A. Yes.

"Q. Did you try to bite him or anything?

"A. No. I didn't try to bite him. I was kicking and trying to get away, but then two other guys come and there was three of them.

"Q. And, you say they took you over and put you in the pickup then?

"A. Yes, in the cab of the truck.

"Q. And, did you try to scream or anything?

"A. No, I was just so hysteric I didn't think of doing anything. I was just so scared.

"Q. Too scared to scream?

"A. Well, yes." Rptr.Tr., p. 40.

Had this case gone to the jury and the jury returned a verdict of guilty on the kidnapping count, on the basis of the quoted testimony we would have concluded that the evidence was sufficient to sustain a conviction. The credibility of the witnesses and the weight to be given their testimony are matters for the jury, not the court. State v. Gailey, 69 Idaho 146, 204 P.2d 254 (1949). By erroneously concluding that the state had not introduced evidence upon which we could sustain a verdict of guilty of kidnapping and by preventing the jury from determining the question presented, the trial judge committed serious error in dismissing the kidnapping counts.

We also believe that the trial court erred in dismissing the rape counts against the two defendants, although it is unclear to us whether the dismissal was based upon an erroneous ruling of law or upon an erroneous finding of fact by the trial judge. The judge dismissed the complaint because the prosecution had not proved the complaining witness's fear beyond a reasonable doubt, i. e., because it had not proved beyond a reasonable doubt that the complaining witness was prevented from resistance "by threats of immediate and great bodily harm, accompanied by apparent power of execution . . . ." From the argument of counsel upon the motion to dismiss, it might be concluded that the court construed the language of the rape statute to require as a matter of law that the "threats" referred to in the statute be either spoken threats or the threats of visi-

bly displayed weaponry. Alternatively, the rape counts may have been dismissed because the trial judge found that under these circumstances the lack of proof of an explicit threat was insufficient as a matter of fact to prove beyond a reasonable doubt that the complaining witness's resistance was overcome by "threats of immediate and great bodily harm." The ruling was erroneous, whether it was based upon the former or the latter reasoning. Because of this ruling of the trial court, we believe it is desirable to clarify the interpretation of our rape statute, I.C. § 18–6101, for the benefit of the state and other defendants who may be charged with the crime. State v. Tinno, *supra*. We believe the case of People v. Flores, 62 Cal.App.2d 700, 145 P.2d 318 (1944), which construes language in the California rape statute identical to that of I.C. § 18–6101, correctly states the law to be applied concerning force and resistance and shows that the evidence was sufficient to sustain a conviction for the offense of rape.

In *Flores* a nineteen year old woman was leaving a San Diego cafe at approximately midnight when she was accidentally struck on the forehead by a bottle wielded by a participant in a fight occurring in front of the cafe. The woman was dazed and bleeding, and a passerby offered to take her to a doctor in his automobile. There were three additional men in the car. After riding in the car for some time, she realized that she was not being taken to a doctor, but was instead being taken away from the city. Once, when the car stopped at an intersection, the woman opened the car door and attempted to escape but was forcibly held in the car. She was then driven to a remote area where she claimed she was forced to engage in intercourse with each of the four men in the car. All of the defendants were tried and convicted of the crimes of rape and kidnapping and appealed from their convictions upon both of these counts. The court upheld both the rape and kidnapping con-

victions, saying the following with regard to the rape count:

> "It is next urged by all of the appellants that the evidence is insufficient to sustain their convictions on the charges of rape accomplished by threats of bodily harm. These counts of the information were based upon subd. 4 of Penal Code, sec. 261, which applies where the female is prevented from resisting 'by threats of great and immediate bodily harm, accompanied by apparent power of execution.' It is argued that since the complaining witness testified that she made no physical resistance at the times in question because she was afraid of the appellants, and because she further testified that no spoken threats were made as to what they would do to her if their demands were refused, it follows that there were no threats of great and immediate bodily harm within the meaning of the statute and that they could not be convicted under this subdivision of section 261.

> "We are unable to agree with the view that there can be no threat within the meaning of this statute unless it is expressed in words or through the exhibition of a gun, knife or other deadly weapon. *A threat may be expressed by acts and conduct as well as by words.* If one were met in a lonely place by four big men and told to hold up his hands or to do anything else, he would be doing the reasonable thing if he obeyed, even if they did not say what they would do to him if he refused. Their actions and manner might well indicate their purpose and intention and it would be a mere play on words to say that these actions and circumstances did not constitute and were not the expression of a threat. In fact, it would be a very compelling one. We think similar considerations are applicable here." 145 P.2d at 319–320. (Emphasis added).

■ In the case at bar the complaining witness testified that she was grabbed

by one of the defendants, that he placed his hand over her mouth and told her not to scream or try to make any noises. Two other men appeared and dragged and shoved her toward a pickup. She was kicking and trying to escape but was unable to do so. She was then driven to a remote area where she was led to the back of a pickup and, because she feared for her life, she engaged in intercourse with each of the three men who had brought her there. We cannot say that these events do not constitute "threats of immediate and great bodily harm, accompanied by apparent power of execution," i. e., we cannot say that there was no evidence of force involved. We expressly reject the notion that when a woman has not physically resisted the defendant from engaging in intercourse with her and when the defendant has neither verbally threatened her or visibly displayed weaponry to her that as a matter of law the defendant has not committed rape. Threats or force can come in forms other than verbalized threats or displays of weaponry. State v. Flores, *supra*. The complaining witness's testimony that she did not resist the defendants' advances because she feared for her life, that she even kissed Lewis while they were alone in the back of the truck during which time she persuaded him to try to convince Robinson and the unidentified man not to have intercourse with her, and that she agreed to meet Lewis the following afternoon were all factors which the jury could take into account in determining whether in fact she had consented to engage in intercourse or whether she did it out of "fear for her life."[4] However, the introduction of such evidence is not grounds for a dismissal. It is the province of the jury, not the judge, to weigh such evidence and determine whether there was a threat of force. State v. Gailey, *supra*. Therefore, since evidence was introduced upon which a conviction for rape could have been sustained, it was also error to dismiss the rape counts. The order dismissing the rape and kidnapping charges pursuant to I.R.Cr.P. 29(a) was error.

■ Although the trial judge erroneously dismissed the charges against these two defendants, the Idaho Constitution, Article 1, § 13, which provides that "[n]o person shall be twice put in jeopardy for the same offense," prevents the retrial of the defendants on either the kidnapping or the rape charges. Similarly, the Fifth Amendment to the Constitution of the United States which provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb," which in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), was held to be applicable to the states through the Fourteenth Amendment to the United States Constitution, prevents the retrial of these defendants. The dismissal of the kidnapping charges was based upon an evaluation of the evidence, albeit an erroneous evaluation, and having once had the factual issues involved in the kidnapping charge resolved in their favor the defendants may not be retried. It is unclear upon what basis the rape charges were dismissed, whether they were dismissed upon an erroneous evaluation of the evidence or upon an erroneous interpretation of the law, but because the dismissals might have been based upon a factual determination favorable to the defendants they cannot be retried upon the rape charges. United States v. Jenkins, —— U. S. ——, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). Jeopardy had long since attached to these proceedings and in a jury trial, as this was, a termination of the proceedings by the judge upon a Rule 29(a) motion because "the evidence is insufficient to sustain a conviction" is a factual determination of innocence favorable to the defendant which for double jeopardy purposes

---

4. That a rape victim is in danger of subsequently being killed by her assailants is amply demonstrated by the transcript in the case of State v. Izatt, 96 Idaho 667, 534 P.2d 1107 (1975), argued this same term.

must be equated to a jury verdict of "not guilty"; therefore, the defendants cannot be retried because of the double jeopardy clauses of the Idaho and United States Constitutions. *See* United States v. Jenkins, *supra*; United States v. Wilson, —— U.S. ——, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.