808 P.2d 1326

STATE of Idaho, Plaintiff–Respondent,

v.

Shawn GOSSETT, Defendant–Appellant.

STATE of Idaho, Plaintiff–Respondent,

v.

Kent L. CLAPPER, Defendant–Appellant.

Nos. 18275, 18277.

Court of Appeals of Idaho.

Feb. 7, 1991.

Rehearing Denied March 28, 1991.

Petition for Review Denied May 6, 1991.

Gregory A. Jones, Kootenai County Public Defender, Coeur d'Alene, for defendants-appellants.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael A. Henderson argued.

WINMILL, Judge, Pro Tem.

The appellants, Shawn Gossett and Kent Clapper, seek reversal of their convictions for rape. The sole issue on appeal is whether the evidence presented at trial was sufficient to support the jury verdicts finding them guilty of the offense. We affirm.

The complaining witness in this case was a twenty-five year old woman residing in

Hauser Lake, Idaho. On the evening of September 16, 1988, she was driving friends to her house when one of them recognized Gossett in the car ahead. They followed his vehicle for a short distance to the parking lot of a nearby bar. The complaining witness, having met Gossett before, told him that she was having friends over that evening and invited him to her home to join them for drinks. Gossett said he would come after he got some beer. She and her friends then continued to her home. Gossett arrived about an hour later. Around that same time Kent Clapper arrived, but stayed only a short while and then left. Later, after most of the guests had departed, the complaining witness and Gossett began kissing on the couch. Gossett asked her several times to accompany him to her bedroom. Her repeated response was that she was "not sure." Gossett eventually picked her up and carried her to the bedroom, placing her on the bed. He repeatedly asked her if she wanted to go to bed with him or to "get naked." Several times she answered, "I don't know." Finally, she said, "No." Gossett got up and went into the living room. A short time later he came back and asked. "Are you sure?" She responded, "I'm sure." Gossett and the remaining guest then left.

The complaining witness then locked both the front and back doors, using deadbolt locks. She believed that she had turned off all the lights inside the home. There were no functioning lights by the back door. The music that was on earlier was turned off. Her young sons were sleeping in their room, and her sister, who also lived in the house, was sleeping in her own room. At approximately 12:30 a.m. to 1:00 a.m., the complaining witness went to sleep in her bed, wearing a T-shirt and underwear.

In the meantime, Gossett had encountered Kent Clapper outside of a nearby bar. They drove around together looking for a party. They eventually returned to the complaining witness's residence. The two men went to the front door, and, finding it locked, went around to the back door. That door-lock apparently was ineffective, and the appellants managed to enter the house. Gossett and Clapper went to the bedroom of the complaining witness. Together, Gossett and Clapper began to remove the underwear from the complaining witness. She awoke but said nothing. The men proceeded to have sexual intercourse with her. At some time during sexual intercourse, she began to cry aloud.

After the men left, she lay in her bed with the covers over her head and continued sobbing. Her sister heard her crying from the next room and got up to check on her. She found her hysterical and unable to speak. That morning she called their mother, who came to the house and immediately telephoned the police.

The state subsequently charged Gossett and Clapper with rape. At trial, both Gossett and Clapper testified. They admitted to having sexual intercourse with the complaining witness, but maintained that they acted with her consent. The jury returned verdicts finding both Gossett and Clapper guilty of rape. Gossett and Clapper maintain that the verdicts were not supported by the evidence, and that their judgments of conviction for rape must therefore be reversed. Their cases have been consolidated for review pursuant to stipulation.

Where a conviction is challenged on the basis of insufficient evidence, the applicable standard of review is whether there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct.App.1989). We are precluded from substituting our judgment for that of the jury as to credibility of the witnesses, the weight of the testimony, and the reasonable inferences to be drawn from the evidence. *Id.* On appeal, the evidence is viewed in the light most favorable to the government. *State v. Fenley*, 103 Idaho 199, 646 P.2d 441 (Ct.App.1982).

The allegations charging the appellants with rape, as set forth in the Informations filed in this case, were based on upon I.C. § 18–6101(4), which applies where the female is prevented from resisting "by threats of great and immediate bodily harm, accompanied by apparent power of execution." It is well established that the statute does not require evidence of a spoken threat or a visible display of weaponry to sustain a conviction under I.C. § 18–6101(4). *State v. Lewis*, 96 Idaho 743, 536 P.2d 738 (1975). The appellants submit, however, that under *Lewis* rape can occur in the absence of spoken threats or the display of weapons only when force is involved. To support their position, the appellants refer to a portion of the *Lewis* Court's discussion of the evidence in that case. The Court stated, "We cannot say that these events do not constitute 'threats of immediate and great bodily harm, accompanied by apparent power of execution,' *i.e., we cannot say that there was no evidence of force involved.*" *Lewis*, at 750, 536 P.2d at 745 (emphasis added). The appellants have taken the italicized language out of context which would undermine the express reasoning and holding of the Court's decision, and would equate "threats of immediate and great bodily harm" with "force"—two distinct and alternative theories provided by statute to establish lack of consent. I.C. § 18–6101; *State v. Banks*, 113 Idaho 54, 740 P.2d 1039 (Ct.App.1987). We find such a reading of the opinion untenable. Quoting from *People v. Flores*, 62 Cal.App.2d 700, 145 P.2d 318, 320 (1944), which construed a provision of the California penal code identical to subsection (4) of Idaho's rape statute, the *Lewis* Court stated:

> We are unable to agree with the view that there can be no threat within the meaning of this statute unless it is expressed in words or through the exhibition of a gun, knife or other deadly weapon. *A threat may be expressed by acts and conduct as well as by words.* If one were met in a lonely place by four big men and told to hold up his hands or

to do anything else, he would be doing the reasonable thing if he obeyed, even if they did not say what they would do to him if he refused. Their actions and manner might well indicate their purpose and intention and it would be a mere play on words to say that these actions and circumstances did not constitute and were not the expression of a threat. In fact, it would be a very compelling one. We think similar considerations are applicable here.

96 Idaho at 749, 536 P.2d at 744 (emphasis added by *Lewis* Court). Moreover, we observe that the Court in *Lewis* considered the evidence under both the "rape by force" provision of subsection (3) of the statute, and the "rape by threats of harm" provision of subsection (4), which may explain the mixing of the two concepts in the phrase referenced by the appellants. In any case, evidence of force clearly is not required to support a finding of rape under I.C. § 18–6101(4). Accordingly, we reject the appellants' assertion to the contrary.

We next review the record to determine whether, viewing the evidence, and drawing all permissible inferences therefrom, in the light most favorable to the state, a reasonable jury could find that the complaining witness was prevented from resisting by threats of harm. Having reviewed the entire record, we conclude that there was substantial, albeit conflicting, evidence to support such finding.

The record in this case discloses a late-night, uninvited, and unannounced entrance by the appellants into a home while the occupants were asleep. The complaining witness was unaware of their presence and awoke to discover them trying to remove her underwear. She testified that she was very tired when she first sensed someone touching her and assumed that Gossett had returned. She decided to ignore him, thinking he would then lose interest and leave. She testified that, "If he didn't get the message, I would probably have told him to stop, leave me alone, I'm tired. But before I could do that I realized that there was

somebody else in the room besides Shawn Gossett." When asked how she felt about her personal safety at that moment, she responded, "I stopped feeling. I didn't feel anything. I couldn't think. It's hard to explain, you can't know what it's like to wake up and feel a stranger touching you. I didn't, I just stopped, my brain quit functioning." Both men were touching her and removed her underclothing. They each had intercourse with her. She testified that while one of the appellants was having intercourse with her, the other remained in the bed. "They put me where they wanted me and that's where I went." During these events, she was "scared." She told the jury, "I didn't know what to be afraid of. I didn't even know what was happening to me. I was just afraid. I wasn't thinking coherently at all.... I [sic] was just pure fear." The record indicates that the complaining witness offered no physical resistance, and that the appellants made no spoken threats nor displayed any weapons. It appears that the only verbal communication occurred when she began to sob and Gossett responded by telling her to stop being a "cry-baby."

The evidence also describes the disparity between the size of the complaining witness, who weighed eighty-five pounds, and that of each of the appellants: Gossett was five feet, nine inches tall and weighed one hundred sixty-five pounds; Clapper was five feet, ten inches tall and weighed one hundred eighty-five pounds. All of this evidence was subject to interpretation by the jury in order to determine whether the acts or conduct of the appellants constituted "threats of harm" sufficient to explain the lack of resistance under I.C. § 18–6101(4). *See Lewis*, at 750, 536 P.2d at 745. The question was one of fact for the jury and we hold that its finding was supported by the evidence.

Accordingly, the judgments of conviction are affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.