# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 38554

STATE OF IDAHO,

      Plaintiff-Appellant-Cross-Respondent,

v.

DARREN DUSTIN CARMOUCHE,

      Defendant-Respondent-Cross-
      Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

2013 Opinion No. 62

Filed: November 21, 2013

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. James C. Morfitt, District Judge.

Appeal challenging acquittal on persistent violator sentence enhancement, <u>dismissed</u>. Appeal from judgment of conviction for attempted strangulation, second degree kidnapping, aggravated battery by use of a deadly weapon, and domestic battery, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for respondent. Sarah E. Tompkins argued.

---

LANSING, Judge

The State appeals from the district court's judgment, entered after a bench trial, acquitting Darren Dustin Carmouche on an allegation that he was subject to a sentence enhancement for being a persistent violator of the law. The State asserts primarily that the district court erred in a sua sponte post-trial ruling that evidence that had been admitted at trial without objection was inadmissible hearsay and would not be considered in determining whether Carmouche was a persistent violator. Carmouche responds that the State's claims of error are rendered moot by constitutional prohibitions against double jeopardy. Carmouche also cross-appeals from the judgment of conviction on the underlying charges. He contends that the

1

prosecutor impermissibly presented evidence of and commented on Carmouche's refusal to give consent to a search of his residence, and that this misconduct requires that his convictions be reversed. We find the State's claims of error to be moot and therefore dismiss its appeal. On the cross-appeal, we affirm the judgment of conviction.

## I.

## BACKGROUND

After Carmouche attacked his girlfriend, he was charged with four felonies: attempted strangulation, Idaho Code § 18-923; second degree kidnapping, I.C. §§ 18-4501, 18-4503; aggravated battery by use of a deadly weapon, I.C. §§ 18-907(1)(b), 18-903(b); and domestic battery, I.C. §§ 18-918(2)(a), 18-903(b). Part II of the indictment alleged that Carmouche was subject to a sentence enhancement as a persistent violator of the law, I.C. § 19-2514, with respect to each of the four felony charges. The matter proceeded to a bifurcated trial with the criminal charges tried before a jury, which found Carmouche guilty of all four offenses, and the persistent violator sentencing enhancements tried to the court by consent of the parties.

The only issue to be determined at the bench trial was whether Carmouche had been convicted of felony offenses on at least two prior occasions. *See* I.C. § 19-2514. The State placed into evidence certified copies of two prior felony judgments that named the defendant as Darren Dustin Carmouche and stated identical dates of birth and social security numbers for the defendant. The State then sought to establish that Carmouche had the same date of birth and social security number as those shown on the judgments in order to establish that he was the same person named in the judgments. A copy of Carmouche's Idaho driver's license, bearing the same date of birth as the judgments, was admitted into evidence without objection. The State also called a detective who testified that she had read and printed a report from an "ILETS machine" that contained Carmouche's social security number. Without defense objection, she then testified to the social security number shown on the report, which matched the social security number on the judgments. When the prosecutor offered the report itself into evidence, however, the defense objected on hearsay grounds. The prosecutor, when asked by the court, was unable to identify an applicable hearsay exception, and he eventually withdrew his request for admission of the document. At the close of the evidence, the parties and the court discussed the admissibility of the detective's testimony in which she read the social security number from

2

the ILETS report and the weight to be afforded that testimony. The defense did not, however, move to strike this testimony as hearsay or on any other ground.

At the close of the proceeding, the district court found the State had proved the persistent violator allegation. The court stated:

> The same date of birth of May 17, 1980 is the same on both [admitted judgments of conviction]. The unobjected to and unrebutted testimony of [the detective] was that ILETS reflected the Social Security number of [reading Social Security number]. The ILETS report was--the State then sought to admit that [report]. And that was objected to, and the objection was sustained about the basis of hearsay and not falling within any of the exceptions to the hearsay rule.
> However, the testimony as to what Social Security number reflected for the driver's license which was admitted into evidence as [Exhibit] 62A related to that Social Security number.
> The court thus finds, barely, that the State has met their burden of establishing the prior convictions beyond a reasonable doubt as to each of the two prior convictions set out as State's Exhibits 63 and 64 as alleged in Part II of the information with respect to each of the four counts. And I will enter judgment accordingly.

Thereafter, however, the court filed written findings of fact and conclusions of law acquitting Carmouche on the persistent violator allegation. The court recounted its ruling that the ILETS report was hearsay and then concluded that the detective's testimony as to what the ILETS report stated--Carmouche's social security number--was also hearsay. The court then said:

> The Court is required to make its findings as to Part II of the Amended Superceding Indictment upon admissible evidence. When the Court is the trier of fact, the Court may disregard any inadmissible evidence in making its findings. The mere fact that a witness testifies as to inadmissible hearsay without objection or without a motion to strike does not require the Court to ignore that the evidence is inadmissible. The Court thus finds and concludes that the State presented no admissible evidence as to the social security number of the defendant at trial in this case.

The district court further wrote that it "finds and concludes that this Court erred in considering the hearsay testimony as to the defendant's social security number in making its oral ruling at the conclusion of the Court trial on Part II of the Amended Superceding Indictment." The court then found that the remaining evidence was insufficient to prove that Carmouche was the defendant named in the prior judgments of conviction, and thus held that the State had not proven Carmouche to be a persistent violator.

3

The State filed a motion for reconsideration of this finding. It argued that given the court's determination that the testimony as to Carmouche's social security number was inadmissible, the proper remedy was a new trial on the persistent violator enhancement rather than an acquittal for insufficient evidence. The district court denied the motion and imposed sentences without a persistent violator enhancement.

The State appeals, challenging the district court's acquittal of Carmouche on the persistent violator enhancement, and Carmouche cross-appeals from his judgment of conviction.

## II.

## ANALYSIS

### A. State's Appeal--Double Jeopardy

#### 1. State's argument that the district court erred by disregarding the social security number testimony

The State's first claim of error is that "the district court erred by *sua sponte* reviewing the trial for evidentiary error to which no objection had been made and then declining to consider the inadmissible evidence in arriving at the district court's ultimate findings. The State relies upon the general rule that "where hearsay evidence is admitted without objection, it may properly be considered in determining the facts; the important question being the weight to be given such evidence." *Phillips v. Erhart*, 151 Idaho 100, 105, 254 P.3d 1, 6 (2011) (quoting *Gem-Valley Ranches, Inc. v. Small*, 90 Idaho 354, 371, 411 P.2d 943, 953 (1966)). The State argues that the district court's statement that it was "required" to make its findings upon admissible evidence "is the opposite of the applicable law." Presumably, the State means that *Phillips*' statement that the trier of fact "may" consider the evidence connotes discretion, while the district court may not have recognized the matter as one of discretion because it mistakenly thought that it was "required" to consider only admissible evidence.

Carmouche responds that this claim of error is moot because constitutional prohibitions against double jeopardy require that the district court's ultimate judgment of acquittal, even if erroneous, must stand.

We first address Carmouche's argument that the State's appeal is rendered moot by constitutional prohibitions against double jeopardy.[1] The Fifth Amendment of the United States

---

[1] Idaho law and federal law treat slightly differently the ability of a prosecutorial entity to appeal where double jeopardy bars a remedy. In the federal system, no appeal lies in such an

4

Constitution directs that no person shall be "twice put in jeopardy of life or limb" for the same offense. Article I, § 13 of the Idaho Constitution similarly specifies that "[n]o person shall be twice put in jeopardy for the same offense." When a trial court enters a judgment of acquittal based on a determination that the evidence is factually insufficient to support a charge, the prohibition against double jeopardy bars retrying the individual for the same offense. *Smalis v. Pennsylvania*, 476 U.S. 140, 144-46 (1986); *State v. Lewis*, 96 Idaho 743, 750, 536 P.2d 738, 745 (1975).

Under Idaho law, when alleged for purposes of a persistent violator sentence enhancement, the fact of the defendant's prior convictions must be proved to the trier of fact at the trial of the primary charge. I.C.R. 7(c); *State v. Johnson*, 86 Idaho 51, 59-62, 383 P.2d 326, 330-333 (1963); *State v. Scheminisky*, 31 Idaho 504, 507, 174 P. 611, 611-12 (1918). The State does not dispute that the constitutional prohibition against a second trial after acquittal applies to trials of persistent violator sentence enhancements. *See, e.g.*, *United States v. Blanton*, 476 F.3d 767, 769-71 (9th Cir. 2007); *State v. Sawatzky*, 125 P.3d 722, 726 (Or. 2005).

The Double Jeopardy Clause prohibits reexamination of a court-decreed acquittal to the same extent that it prohibits reexamination of acquittal by a jury. *Smith v. Massachusetts*, 543 U.S. 462, 467 (2005); *State v. Howard*, 150 Idaho 471, 478, 248 P.3d 722, 729 (2011). This prohibition generally precludes the State from obtaining a new trial through the pursuit of an appeal after a defendant has been acquitted of a charged offense. *See, e.g.*, *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977). As stated by the United States Supreme Court, "it is one of the elemental principles of our criminal law that the government cannot secure a new trial by means of an appeal even though an acquittal may appear to be erroneous."

---

instance, 18 U.S.C. § 3731; *United States v. Wilson*, 420 U.S. 332, 344-45 (1975), and the appeal must be dismissed. In Idaho, however, Idaho Appellate Rule 11(c)(4) provides that the State may appeal as a matter of right from: "Any order or judgment, whenever entered and however denominated, terminating a criminal action, provided that this provision shall not authorize a new trial in any case where the constitutional guarantee against double jeopardy would otherwise prevent a second trial." Thus, it seems that in Idaho the State may appeal, but if double jeopardy bars a remedy, the issues raised by the State are moot and need not be addressed on the merits because no relief is available to the State. *See State v. Long*, 153 Idaho 168, 280 P.3d 195 (Ct. App. 2012).

*Green v. United States*, 355 U.S. 184, 188 (1957). "[T]he Double Jeopardy Clause bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but if reversal would translate into further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged." *Smalis*, 476 U.S. at 145-46 (citation and internal quotation marks omitted). *See also Arizona v. Rumsey*, 467 U.S. 203, 211-12 (1984); *United States v. Jenkins*, 420 U.S. 358, 370 (1975).

A new trial will be barred even where the acquittal resulted from an error of law by the trial court. This is illustrated in *Rumsey*, 467 U.S. at 211, where the United States Supreme Court said:

> In making its findings, the trial court relied on a misconstruction of the statute defining the pecuniary gain aggravating circumstance. Reliance on an error of law, however, does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits. "[T]he fact that 'the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles' . . . affects the accuracy of that determination, but it does not alter its essential character." *United States v. Scott*, 437 U.S. 82, 98, 98 S. Ct. 2187, 2197, 57 L. Ed. 2d 65 (1978) (quoting *id.*, at 106, 98 S. Ct., at 2201 (BRENNAN, J., dissenting)). Thus, this Court's cases hold that an acquittal on the merits bars retrial even if based on legal error.

*See also Smalis*, 476 U.S. at 144 n.7 (holding double jeopardy bars a retrial even if the trial court's acquittal was based upon a mistake in determining the degree of recklessness necessary to sustain a conviction); *Sanabria v. United States*, 437 U.S. 54, 64 (1978) ("[W]hen a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous."); *Martin Linen Supply Co.*, 430 U.S. at 571 (same). A retrial is precluded even if the acquittal was based on the trial court's reasoning that the State lacked proof on an element that was not actually an element of the crime. *See Evans v. Michigan*, ___ U.S. ___, 133 S. Ct. 1069 (2013).[2]

---

[2]     The United States Supreme Court's *Evans* opinion expressly abrogated lower court decisions holding otherwise, including the Idaho Supreme Court's decision in *State v. Korsen*, 138 Idaho 706, 716-17, 69 P.3d 126, 136-37 (2003), and the case on which it relied, *United States v. Maker*, 751 F.2d 614, 624 (3rd Cir. 1984). *See Evans*, ___ U.S. at ___ n.3, 133 S. Ct. at 1074 n.3. The Idaho Supreme Court's decision in *State v. Howard*, 150 Idaho 471, 479, 248 P.3d 722, 730 (2011), which followed *Korsen*, is likewise abrogated.

There is an exception, however, to this bar to appellate relief for the State. Double jeopardy does not prohibit the appeal of a court-ordered acquittal entered after a jury has first returned a guilty verdict, because reversal of the court's acquittal will not require a new trial. In *Smith*, 543 U.S. at 467, the United States Supreme Court explained:

> When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty. *United States v. Wilson*, 420 U.S. 332, 352-353 [95 S. Ct. 1013, 1026, 43 L.Ed.2d 232, 246-247] (1975). But if the prosecution has not yet obtained a conviction, further proceedings to secure one are impermissible: "[S]ubjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause." *Smalis v. Pennsylvania*, 476 U.S. 140, 145 [106 S. Ct. 1745, 1749, 90 L. Ed. 2d 116, 122] (1986).

It is on this proposition of law that the State rests its contention that its appeal is not moot. The State argues that the double jeopardy bar does not preclude relief for the State because the district court's oral finding at the end of the trial that "the State has met their burden of establishing the prior convictions beyond a reasonable doubt as to each of the two prior convictions" was a finding of guilt, requiring no further district court proceedings in order for it to be reinstated if we find error in the entry of the subsequent acquittal.

The State's contention that the claimed error could be corrected by simply reinstating the prior finding of guilt requires that we consider whether the district court's initial oral finding was sufficiently final to constitute the equivalent of a jury's guilty verdict. The necessity of finality in a verdict, for application of double jeopardy principles, was highlighted by the United States Supreme Court's recent decision in *Blueford v. Arkansas*, ___ U.S. ___, 132 S. Ct. 2044 (2012). The defendant there was charged with capital murder. That charge included the lesser offenses of first degree murder, manslaughter, and negligent homicide. Before the start of jury deliberations, the trial court gave an "acquittal first" instruction directing the jury to first consider the offense of capital murder and resolve that charge unanimously before considering the next lesser offense of first degree murder, and so on down the line. After deliberating for a few hours, the jury foreperson reported that the jury was unanimous against guilt on the charges of capital murder and first degree murder, but was deadlocked on manslaughter and had not yet reached the charge of negligent homicide. The court directed the jury to continue to deliberate. The jury did so but still could not reach a verdict, and a mistrial was declared. When the state

7

subsequently sought to retry Blueford, he moved to dismiss the capital and first degree murder charges because, he contended, he had already been acquitted on these charges at the first trial and the double jeopardy bar prevented his retrial for those offenses. The trial court denied the motion, and the Supreme Court of Arkansas affirmed.

Before the United States Supreme Court Blueford contended the foreperson's announcement of the jury's unanimous votes on capital and first degree murder was an acquittal on the two charges because it represented a resolution of some or all of the elements of those offenses in his favor. The Supreme Court disagreed. It held that no acquittal had occurred, stating:

> The foreperson's report was not a final resolution of anything. When the foreperson told the court how the jury had voted on each offense, the jury's deliberations had not yet concluded. The jurors in fact went back to the jury room to deliberate further, even after the foreperson had delivered her report. When they emerged a half hour later, the foreperson stated only that they were unable to reach a verdict. She gave no indication whether it was still the case that all 12 jurors believed Blueford was not guilty of capital or first-degree murder, that 9 of them believed he was guilty of manslaughter, or that a vote had not been taken on negligent homicide. The fact that deliberations continued after the report deprives that report of the finality necessary to constitute an acquittal on the murder offenses.

*Id.* at ___, 132 S. Ct. at 2050. In response to Blueford's argument that any possibility that the jurors revisited the murder offenses was foreclosed by the instructions given to the jury, the Supreme Court held that the instructions did not preclude the jury from reconsidering, and then said:

> It was therefore possible for Blueford's jury to revisit the offenses of capital and first-degree murder, notwithstanding its earlier votes. And because of that possibility, the foreperson's report prior to the end of deliberations lacked the finality necessary to amount to an acquittal on those offenses, quite apart from any requirement that a formal verdict be returned or judgment entered.

*Id.* at ___, 132 S. Ct. at 2051.

The question presented to this Court is whether the district court's initial finding that the State had "barely" met its burden to prove Carmouche's prior convictions beyond a reasonable doubt constituted a final finding of guilt that may be reinstated if we conclude that the district court erred by subsequently sua sponte excluding the social security testimony; or was the trial

8

court, like the jury in *Blueford*, free to reconsider its initial finding until a formal written finding was entered as a matter of record or the defendant was sentenced and judgment entered.

We conclude that the judge's initial oral finding cannot be deemed "final," for nothing in the law precluded the trial judge from reconsidering and amending that initial oral finding. The Double Jeopardy Clause does not protect the State, and we know of no other principle of law[3] that would preclude a trial court from continuing to ponder the trial evidence and changing its decision after orally stating an initial finding of guilt.[4] In the present case, the oral finding itself, by indicating that the State had "barely" met its burden of proof, discloses that the court was ambivalent about this disposition.

Thus, the district court's initial finding of guilt here does not constitute a final resolution of the factual issues that could be reinstated if this Court were to find error in the district court's subsequent disregard of the detective's testimony about Carmouche's social security number. Rather, it is analogous to the *Blueford* jury's initial findings that did not bear the finality necessary to constitute a verdict for double jeopardy purposes. Therefore, if we were to find error in the district court's subsequent written findings, it would be necessary to remand for new findings on the persistent violator charge. The district court would be required to make new findings while properly recognizing that it possesses discretion to consider the hearsay testimony about Carmouche's social security number and discretion regarding the weight to accord such testimony. However, the double jeopardy bar prohibits subjecting Carmouche to this additional fact-finding proceeding. Therefore, because no remedy is available to the State, its claim of error is moot.

### 2.     Sufficiency of the evidence

The State's briefing also asserts that the district court erred by acquitting Carmouche on the persistent violator enhancement because the evidence was sufficient to convict even absent

---

[3]     Idaho Criminal Rule 23 authorizes bench trials in criminal cases, but neither this rule nor any other directs how or when bench trial verdicts are to be entered.

[4]     We caution, however, that a trial court should not routinely determine, post-trial and sua sponte, that evidence admitted without objection was inadmissible and for that reason disregard the evidence. Such post-trial "exclusion" of evidence may occur without the proponent of the evidence receiving an opportunity to address the admissibility issue. Additionally, the proponent may have relied upon the admission of the evidence by foregoing the presentation of other, admissible evidence that could have been proffered on the same issue.

the detective's testimony stating Carmouche's social security number. According to the State, "overwhelming evidence proves the enhancement beyond a reasonable doubt." Thus, the State's briefing contends that even if the district court did not err in disregarding the social security number testimony, it erred in acquitting based on the remaining evidence, and this error can be remedied by reinstating the district court's initial finding of guilt.

At oral argument, the State modified its position on this issue, acknowledging that this Court possesses no authority to simply substitute its view of the weight or credibility of the evidence for that of the trial court. The State clarified that it was arguing that *if* this Court were to hold that the district court did not err in disregarding the social security number testimony, and *if* an issue somehow arose regarding the sufficiency of the remaining evidence to prove that Carmouche was the defendant in the prior convictions, then it would be the State's position that the nonhearsay evidence was sufficient.

The circumstance posited by the State at oral argument has not arisen and will not arise, for this Court has declined to address the propriety of the district court's sua sponte post-trial exclusion of the hearsay testimony because double jeopardy principles render that issue moot. Therefore, we do not further discuss the State's contention that the evidence presented, even absent the social security number testimony, was sufficient to prove that Carmouche was a persistent violator.[5]

### B.    Cross-Appeal--Prosecutorial Misconduct

Carmouche cross-appeals from the judgment of conviction entered upon the jury verdict finding him guilty of four felonies. He contends that testimony elicited by the State and a statement in the prosecutor's closing argument violated his Fourth Amendment rights and require that his convictions be reversed.

The charges against Carmouche stemmed from an attack on his girlfriend. Two officers responded to a residence shared by Carmouche and his girlfriend after Carmouche called a suicide hotline. During the State's case-in-chief at trial, one of the officers testified that when he and another officer arrived at the scene, Carmouche initially refused to exit the residence. When

---

[5]    At oral argument in this case, the State withdrew a third issue that was raised in its briefing--that even if the district court's post-trial decision to disregard the social security number testimony was not error, the correct remedy would have been a new trial on the persistent violator enhancement.

he did, said the officer, Carmouche shut the door behind him. In response to questions by the officers, Carmouche insisted that everything was fine but admitted that his girlfriend was still inside the apartment. The officer testified that Carmouche refused to give consent for the officers to enter the apartment to check on his girlfriend. According to the officer, Carmouche stated that "he knew his rights." The officer knocked repeatedly and yelled into the house. When the girlfriend eventually emerged, she had visible injuries to her face and body.

Carmouche contends that the prosecutor committed misconduct by presenting the officer's testimony about Carmouche's refusal to allow entry[6] and by making the following statement during closing argument:

> When they asked about his girlfriend he had a fight with, well, she's asleep. You can't see her. I know my rights. You can't go in. Why? Why, if he came home and found her beaten this way and heard these stories?[7] Would that be your response?

Carmouche posits error in both the testimony and the closing argument because, he contends, it was improper for the prosecutor to use evidence that Carmouche exercised his Fourth Amendment right to refuse consent for police to enter his home.

Because Carmouche made no trial objection to the officer's testimony or to the prosecutor's closing argument, he must establish fundamental error. To do so, he must persuade this Court that the alleged error: (1) violates one or more of his unwaived constitutional rights; (2) the error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) the error affected the outcome of the trial proceedings. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

In *State v. Christiansen*, 144 Idaho 463, 163 P.3d 1175 (2007), the Idaho Supreme Court determined that an accused's assertion of his Fourth Amendment right to refuse consent to a search may not be used by the State as evidence from which to infer guilt. The Court held that

---

[6] The prosecutor did not actually elicit the challenged testimony as the officer's statement was gratuitously offered. Under Idaho law, however, "when an officer of the State gives any unsolicited testimony that is gratuitous and prejudicial to the defendant, that testimony will be imputed to the State for the purposes of determining prosecutorial misconduct." *State v. Ellington*, 151 Idaho 53, 61, 253 P.3d 727, 735 (2011); *State v. Frauenberger*, 154 Idaho 294, 301, 297 P.3d 257, 264 (Ct. App. 2013).

[7] Carmouche had testified that he came home and found the victim already beaten by someone else, and that he tried to convince her to go to the hospital but she refused.

11

the same rationale for excluding evidence of an accused's invocation of his or her Fifth Amendment rights applied to the invocation of an accused's Fourth Amendment rights. *Id.* at 470, 163 P.3d at 1182. We have subsequently held that such misconduct by a prosecutor constitutes fundamental error. *State v. Betancourt*, 151 Idaho 635, 639-40, 262 P.3d 278, 282-83 (Ct. App. 2011).

We will assume, arguendo, that the presentation of evidence of Carmouche's refusal to consent to entry into his residence, and the prosecutor's comment on this evidence, constitute clear constitutional error, and that Carmouche has thus established the first two prongs of fundamental error under *Perry*. We nevertheless conclude that Carmouche is not entitled to relief because he has not established that the error affected the outcome of the trial proceedings to his prejudice.

The improper evidence that Carmouche declined to allow the officer to enter his home was but one of many points of testimony elicited by the State to show that he did not want the police to see or speak with the victim. The officer also testified that Carmouche initially refused to exit the residence but instead wanted to talk through the door. When he did exit, the officer said, Carmouche immediately shut the door behind him. In response to questions, Carmouche insisted that everything was fine and did not mention the victim's condition even though, as police soon discovered, she had been severely beaten, with visible injuries to her face and body. Finally, the victim testified that when the police arrived Carmouche put a blanket over her, covering her entire body and head and told her to tell the police, if asked through the door, that she was asleep. She also said that during the encounter while she was still inside the house Carmouche encouraged her to tell the police that she was okay.

Thus, because the State showed that Carmouche did not want the police to see or contact the victim through a significant body of unobjectionable testimony, Carmouche has not shown that the testimony referencing his exercise of his Fourth Amendment rights, and the prosecutor's brief comment on this testimony, affected the outcome of the trial proceedings. We conclude the error was harmless beyond a reasonable doubt.

### III.

### CONCLUSION

Because the claims of error raised by the State cannot be remedied without impermissibly subjecting Carmouche to double jeopardy, the State's appeal is moot and is dismissed. On

Carmouche's cross-appeal from his judgment of conviction, he has not demonstrated fundamental error. Therefore, the judgment of conviction is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**